# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICRO FOCUS (US), INC.<br>and MICROS FOCUS (IP), LTD | * | |
| | * | |
| **Plaintiffs** | * | **CIVIL No. 09-1085-RWT** |
| v. | * | |
| BELL CANADA | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

Bell Canada, the defendant, submits this memorandum in support of its motion to dismiss the amended complaint brought against it by the plaintiffs, Micro Focus (US), Inc. and Micro Focus (IP) LTD (jointly "Micro Focus"), pursuant to Rule 12(b)(2), for lack of personal jurisdiction.

## INTRODUCTION

Bell Canada is not subject to the jurisdiction of this Court. It is a Canadian company that provides communication services to customers (residential and commercial) located only in Canada. The computer software at issue in this case is used on computers located in Canada. Bell Canada does not transact business in Maryland, as required by the Maryland Long Arm Statute, Md. Cts. & Jud. Proc. Code Ann. § 6-103(b), nor does it have contacts with the State of Maryland sufficient to meet constitutional requirements. If and to the extent Micro Focus attempts to argue that Bell Canada voluntarily subjected itself to the jurisdiction of this Court by agreeing to the terms of the End User License Agreement attached as Exhibit A to the amended complaint (the "EULA"), which purports to contain "forum selection" language, the argument

must fail. The language of the EULA that purports to identify a forum for resolution of disputes

(it mentions Maryland) is hopelessly ambiguous, and cannot be construed as a consent by Bell

Canada to the jurisdiction of this Court nor constitute a waiver by Bell Canada of its right to

contest personal jurisdiction.

## I.     BACKGROUND

### A.     The Allegations.

According to the amended complaint, this action centers on Bell Canada's use, and

alleged misuse, of all or components of Micro Focus's proprietary and copyrighted software

product identified as its "Application Server for Server Express" software (the "Software").

Amd. Compl. ¶ 6.  Micro Focus alleges that Bell Canada incorporated the Software into its

billing system known as "Conso," a billing system that allows Bell Canada's customers to

manage their telephone accounts, including payment of telephone bills, over the internet.  Id.

Micro Focus alleges that the EULA evidences the contractual arrangement between

Micro Focus and Bell Canada in respect of the Software.  Id. at ¶ 7.  Under the EULA, according

to Micro Focus, Bell Canada had a "very limited license" that allowed "only specific user[s]" to

use the Software, that required each user "be identified by name," and that authorized Bell

Canada to use the Software "solely for its own internal use and benefit."  Id. at ¶¶ 7, 12.

Micro Focus alleges that, prior to the fall of 2008, and unbeknownst to Micro Focus, Bell

Canada misused the Software, and violated the terms of the EULA.  Micro Focus alleges that, by

permitting Bell Canada customers to access and use Conso, Bell Canada violated the EULA

because the customers were not licensed, the EULA permitted only "internal" use by Bell

Canada, and Bell Canada had purchased a limited number of licenses and its use (presumably

because of the customer use) had exceeded that number.  Id. at ¶¶ 6, 16.  Micro Focus also

alleges that, by using the Software to conduct "batch" processing within Conso, Bell Canada was operating beyond the limitations of its license. Id. at ¶ 17. The "batch" processing violates the EULA, according to Micro Focus, because it results in processing that "does not require a named individual to use or access" the Software, in contrast to the individual transactional processing authorized by the EULA. Id. Micro Focus claims that "batch" processing is not permitted by the EULA and that, in fact, it requires a different type of license that must be purchased from Micro Focus. Id. at ¶ 6.[1]

Based on these allegations, Micro Focus asserts three causes of action against Bell Canada: Count I alleges that Bell Canada's actions constitute a breach of the EULA; Count II seeks a declaration that Micro Focus is entitled to enforce certain provisions of the EULA in light of Bell Canada's alleged breaches; and Count III alleges copyright infringement under 17 U.S.C. § 501, and seeks statutory or actual damages under 17 U.S.C. § 504. Micro Focus seeks damages measured by the number and quality of licenses that Bell Canada should have purchased to accommodate its actual use, "estimated to be at least $4,786,320." Id. at p. 9.

**B.    Bell Canada.**

Bell Canada is a statutorily created, Canadian federally charted, corporation. Affidavit of Alain Dussault, attached as Exhibit B at ¶ 4. It is the successor to The Bell Telephone Company of Canada Ltd., an entity that was incorporated in 1880. Id. It is headquartered in Montreal, Quebec, Canada. Id. It does not own any telecommunication systems in the United States, and provides no communication services in the United States. Id. at ¶ 5.

---

[1]    Micro Focus also alleges that Bell Canada violated the EULA by failing to reproduce Micro Focus's copyright and other notices, by distributing the Software to third parties, by allowing Bell Canada's customers to access the Software without purchasing licenses, and by failing to provide Micro Focus notice that Bell Canada's uses had exceeded the licenses granted. Id. at ¶ 19.

Bell Canada does not transact, and has never transacted, business in Maryland: it has no offices in Maryland; it owns no real or personal property in Maryland; it has never initiated or solicited business in Maryland; it performs no work or services in Maryland; it generates no revenue from sales, or otherwise, in Maryland; it has no employees in Maryland; and it has never deliberately engaged in any significant or long-term business activity in Maryland. Id. at ¶¶ 6-7.

### C.    Bell Canada's Use of the Software.

In 2001 and 2003, Bell Canada entered into agreements with Amdocs Software Systems LTD,[2] ("Amdocs"), an Irish company, under which Amdocs was to create and manage a customer billing system for Bell Canada that became known as Conso.  Under those, and other agreements, Amdocs developed, created, and installed Conso for Bell Canada.  Amdocs has been operating Conso on an "outsourcing" basis since its inception, and continues to operate it as of today.  Affidavit of Patrick Delage, attached as Exhibit C at ¶¶ 4-5.  The Conso System consists of hardware and software components, all physically located in Bell Canada and Amdocs facilities in Montreal, Quebec.  Id. at ¶ 6.  The system is based principally on Amdocs-created and proprietary software, but also includes "third-party" software, such as the Micro Focus Software at issue here.  Id.  As the designer and provider of Conso, Amdocs determined which software components to include in it, and was responsible for customizing the software to meet Bell Canada's billing requirements.  Id. at ¶ 7.  As the outsourcing operator of the system, Amdocs has always been responsible for managing, and advising Bell Canada regarding system requirements including when it was necessary to renew or upgrade licenses, or increase the number of authorized users, for any of its software components, including the Software.  Id.

---

[2]    Certen, Inc., a Canadian entity, was also a party to the relevant agreements.  Certen was a joint venture created by Bell Canada and Amdocs.  It was subsequently purchased by Amdocs and became Amdocs Canadian Managed Services ("ACMS"), a Canadian corporation.  Exh. C (Delage Aff.) at ¶ 4.  For convenience, and unless context requires otherwise, "Amdocs" is intended herein to include Amdocs itself, plus Certen and ACMS.

The Micro Focus Software at issue here was embedded in Conso as initially created and installed by Amdocs in 2001, on the basis of a certain number of authorized users. Id. at ¶ 8.  On occasion, since the initial installation, Amdocs has advised Bell Canada that additional user authorizations under the Software license were required to accommodate additional Bell Canada customer service representatives. Id.  These individual user authorizations were "added on" to the initial license for the Software that was acquired by Amdocs. Id.  Whenever user authorizations were needed (including during the initial installation) Amdocs identified Bell Canada's licensing requirements, ordered the user authorizations from Micro Focus, and activated the users. Id.

**D.**    **The License.**

Attached to the amended complaint is a copy of the EULA that forms the basis for all of Micro Focus's claims.  That copy of the EULA is also attached to this memorandum as Exhibit A.  Bell Canada assumes, but only for the purposes of this motion, that Exhibit A does, in fact, govern the relationship between Micro Focus and Bell Canada.[3]  While Micro Focus alleges that the license is "nothing more than a 'User License for Authorized Users,'" Amd. Compl. ¶ 11, in fact the EULA provides other licensing options, including two types of "server" licenses. See Exh. A at ¶ 1.2.  Under the EULA, the Licensee's chosen option is to be "identified in the "Product Order," Exh. A (EULA) at ¶ 1, but the amended complaint does not describe or mention a "Product Order."

---

[3]       In doing so, Bell Canada also assumes, arguendo, that it is the "Licensee" under the EULA.  The term "Licensee" is not expressly defined in the EULA, but the EULA seems to anticipate that the Licensee is the entity that executed a "Product Order" which describes "each software purchase." Exh. A (EULA) at 1.  The amended complaint does not allege that Bell Canada executed a "Product Order."  The EULA, itself, does not bear any signature, nor does it seem to anticipate it will be signed by either purported party.

Paragraph 17 of the EULA (captioned "Miscellaneous") includes a variety of purported terms and conditions including language addressing such things as legal authority, contract integration, non-assignability and, as discussed below, choice of law and forum selection.

Although the EULA purports to address forum selection, <u>see</u> relevant EULA text quoted at page 18, <u>infra</u>, the amended complaint does not.  It does not state the basis on which Micro Focus believes or would assert that Bell Canada is subject to the jurisdiction of this Court.  It does not state that, or whether, Bell Canada transacts business in Maryland sufficient to submit itself to this Court's jurisdiction, under either statutory or constitutional standards.  It does not state when, where, or how Bell Canada came to purchase or own the Software.  It does not state when, where, or how the terms of the EULA were conveyed to Bell Canada.

It is against this factual backdrop that Bell Canada's motion to dismiss must be viewed.

## II.    ARGUMENT

### A.    Rule 12(b)(2) Motion Practice.

Under Fed. R. Civ. P. Rule 12(b)(2), a civil action is subject to dismissal if the forum court lacks the requisite personal jurisdiction.  Once a defendant challenges a court's power to exercise personal jurisdiction over the defendant under Rule 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence."  <u>Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.</u>, 334 F.3d 390, 396 (4th Cir. 2003) (citing <u>Mylan Lab., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 59-60 (4th Cir. 1993)); <u>see also</u> <u>Atlantech Distrib., Inc. v. Credit Gen. Ins. Co.</u>, 30 F. Supp. 2d 534, 536 (D. Md. 1998).  When the district court decides a pretrial personal jurisdiction motion, without conducting an evidentiary hearing, relying only on "motion papers, supporting legal memoranda, and the allegations in the complaint, the plaintiff bears the burden [of] making a

prima facie showing of a sufficient jurisdictional basis to survive the jurisdiction challenge."

Consulting Engineers Corp. & Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009) (citing Combs

v. Baker, 886 F.2d 673, 676 (4th Cir. 1989)). In short, the burden is on Micro Focus to establish

jurisdiction, no matter how the resolution of this motion progresses. It will be unable to meet

that burden.

**B.      Statutory and Constitutional Requirements.**

Under Federal Rule of Civil Procedure 4(k)(1)(A), a federal district court may exercise

jurisdiction over an out-of-state defendant (including one domiciled outside of the United States)

so long as the defendant "could be subjected to the jurisdiction of a court of general jurisdiction

in the state in which the district court is located." Ottenheimer Publishers, Inc. v. Playmore, Inc.,

158 F. Supp. 2d 649, 652 (D. Md. 2001). The court must determine whether (a) jurisdiction is

authorized by the long-arm statute of the state in which the court sits and (b) the exercise is

consistent with the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution.

Id. See also Consulting Engineers, 561 F.3d at 277; Carefirst, 334 F.3d at 396.

**1.      The Maryland long-arm statute does not authorize the exercise of
personal jurisdiction over Bell Canada.**

The inquiry begins, then, with an analysis of the Maryland long-arm statute.[4] Under that

statute, a Maryland court may exercise personal jurisdiction over a non-domiciliary who engages

in the following conduct, where the cause of action asserted arises out of that conduct:

(1)      Transacts any business or performs any character of work or service in the State;

---

[4]      There may be some confusion about whether this prong of the analysis is really necessary, as a number of opinions suggest that Maryland's long-arm statute permits personal jurisdiction to the limits of constitutional due process. See, e.g., ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 710 (4th Cir. 2002), cert. denied, 537 U.S. 1104 (2002). Moreover, where (as here) the constitutional requirements are not met, it may not be necessary to analyze the state's long-arm statute. See Consulting Engineers, supra, 561 F.3d at 277 n.4. Some reported decisions, however, instruct that it is not "permissible to simply dispense with analysis under the long-arm statute" in assessing whether a court in Maryland has personal jurisdiction over a defendant. Dring v. Sullivan, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (citing Mackey v. Compass Mktg., 391 Md. 117, 141, 892 A.2d 479, 493 (2006)). Accordingly, we proceed with the statutory prong of the analysis first.

(2)     Contracts to supply goods, food, services, or manufactured products in the State;

(3)     Causes tortious injury in the State by an act or omission in the State;

(4)     Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course or conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

(5)     Has an interest in, uses, or possesses real property in the State; or

(6)     Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

Md. Cts. & Jud. Proc. Code Ann. § 6-103(b) (2007).

Little discussion is required to dispense with most, if not all, of these criteria as a basis for jurisdiction in this case. It cannot be contested that Bell Canada is not, and is not alleged to be, an insurer or surety (subsection (6)), that Bell Canada has no interest in Maryland real or personal property (subsection (5)), and that Bell Canada does not supply goods or services into Maryland (subsection (2)). See Exhibit B (Dussault Aff.) at ¶ 6. The amended complaint does not expressly allege tortious conduct but, to the extent that the infringement claim may be viewed as alleging such conduct,[5] there is, and can be, no allegation that Bell Canada committed any "act," in furtherance of a tort or otherwise, in Maryland, so jurisdiction cannot be based on subsection number three. And, even if Bell Canada's alleged conduct is deemed tortious and

---

[5]     Copyright infringement is generally held to be an intentional tort. CoStar Realty Info., Inc. v. Field, 612 F. Supp. 2d 660, 671-72 (D. Md. 2009).

causing injury in Maryland[6] by an act or omission outside of Maryland,[7] jurisdiction would result

from that conduct only if Bell Canada regularly and persistently solicited business, or engaged in

conduct in Maryland, or derived substantial revenue from the sale of goods or services in

Maryland (subsection (4)).  Bell Canada denies any such conduct, id. at ¶ 6, and believes the

denial will be unchallenged.

That brings the analysis to subsection (1)--"transacts any business" in the State.  The

plain language of this subsection, as well as Maryland courts' interpretation of it, requires that

acts be performed by the defendant within the state; it is not enough that the effects of the

defendant's acts outside of Maryland are felt within the state.  See, e.g., Layton v. AAMCO

Transmissions, Inc., 717 F. Supp. 368, 370 (D. Md. 1989).  Thus, while "[a]ll elements of a

cause of action need not be founded on acts that have taken place in Maryland," the plaintiff

must point to "some purposeful act in Maryland in relation to one or more of the elements of [its]

cause of action."  Talegen Corp. v. Signet Leasing & Fin. Corp., 104 Md. App. 663, 670, 657

A.2d 406, 409 n.3 (1995).  See also Sibert v. Flint, 564 F. Supp. 1524, 1528 (D. Md. 1983)

---

[6]     The issue of the legal situs of an injury to intellectual property rights is not settled.  The difficulty comes from the fact that, because intellectual property rights relate to intangible property, no particular physical situs exists.  See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570 (Fed. Cir. 1994) (citing Acrison, Inc. v. Control & Metering Ltd., 730 F. Supp. 1445, 1448 (N.D. Ill. 1990)).  Most courts have held that the situs of the injury is the residence of the owner of the interest.  See e.g., Acrison, 730 F. Supp. at 1448; McGraw-Hill Cos. v. Ingenium Techs. Corp., 375 F. Supp. 2d 252, 256 (S.D.N.Y. 2005).  Other courts look not to the location of the copyright holder, but the location of the alleged infringer's action(s).  See e.g., Plunket v. Estate of Doyle, 2001 WL 175252, at *3 S.D.N.Y. Feb. 22, 2001) (finding that violation of license was not shown to cause injury in New York, where copyright holder was located, but Washington, D.C. or California, the sites of the alleged infringer's actions).  The amended complaint alleges that Micro Focus (IP) LTD, a United Kingdom Corporation, is the owner of the "copyrights at issue in this action."  Amd. Compl. ¶ 2.  Moreover, the alleged actions giving rise to plaintiffs' infringement claim occurred in Canada.  Thus, under either theory of law, the copyright "injury," if any, in this case would not have occurred in Maryland.

[7]     Because the challenged conduct is the alleged use of the Software without proper licensure, the events allegedly giving rise to the plaintiff's claims (both contract breach and infringement) would have occurred in Montreal, where the Software resides on servers, now owned by Bell Canada, and where the software is accessed and used.  See Exh. C (Delage Aff.) at ¶ 6.  Aside from the impact of this reality on the current motion, it raises serious question about the viability of the plaintiff's infringement claim, considering that the U.S. copyright laws have no extraterritorial effects.  See Subafilms, Ltd. v. MGM-Pathe Commc'ns. Co., 24 F.3d 1088, 1095 (9th Cir. 1994) ("The 'undisputed axiom,' . . . that the United States' copyright laws have no application to extraterritorial infringement predates the 1909 Act.") (citing United Dictionary Co. v. G&C Merriam Co., 208 U.S. 260, 264-66 (1908)).  See also Nintendo of Am., Inc. v. Aeropower Co., 34 F.3d 246, 249 n.5 (4th Cir. 1994).

(subsection (b)(1) "require[s] that some purposeful acts have been performed by the defendant in Maryland in relation to one or more of the elements of the cause of action") (internal citation and punctuation omitted).  This Micro Focus has not alleged and cannot establish.  As the affidavit of Mr. Dussault makes clear, Bell Canada has not engaged in any business activity within the State of Maryland, purposeful or otherwise.  Exh. B (Dussault Aff.) at ¶¶ 6-7.

There is no basis under the Maryland long-arm statute on which Micro Focus may successfully argue that Bell Canada is subject to the jurisdiction of this Court.

### 2. Bell Canada is beyond the constitutional reach of this court's jurisdiction.

"The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant." World-Wide Volkswagen v. Woodson, 444 U.S. 286, 291 (1980).  A court may, consistent with due process, "exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." Id.  It is not enough that the contacts be "random," "fortuitous" or "attenuated." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).  In order to satisfy due process, the contacts "must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" World-Wide Volkswagen, 444 U.S. at 292 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (internal citation omitted).

The requisite minimum contacts exist only if "the defendant's conduct and connection with the forum State are such that the defendant should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.  The defendant must do something purposeful to avail itself of the privilege of conducting activities in the forum, and thereby

invoke the benefit and protection of its laws. Hanson v. Denckla, 357 U.S. 235, 253 (1958). See

also Asahi Metal Indus. Co. v. Super. Ct. of California, 480 U.S. 102, 109 (1987).

To satisfy the minimum contacts requirement, Micro Focus must demonstrate that this

Court has "specific jurisdiction" or "general jurisdiction" over Bell Canada. Carefirst, supra, 334

F.3d at 397. Specific jurisdiction arises out of the defendant's contacts or activities with the

forum relating to the cause of action. General jurisdiction may arise when a defendant maintains

"continuous and systematic" contacts with the forum state, even when the cause of action has no

relation to those contacts. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 n.9

(1983). In view of Bell Canada's lack of contact with the U.S., and Maryland in particular,

Micro Focus will be unable to show that this Court has either specific or general jurisdiction over

Bell Canada.

### a. Specific jurisdiction.

The Fourth Circuit most recently restated its requirements for asserting specific

jurisdiction over a putative defendant in Consulting Engineers. The district court must apply a

three-part test:

> (1) the extent to which the defendant purposefully availed itself of
> the privilege of conducting activities in the State; (2) whether the
> plaintiffs' claims arise out of those activities directed at the State;
> and (3) whether the exercise of personal jurisdiction would be
> constitutionally reasonable.

Consulting Engineers, supra, 561 F.3d at 278 (quoting ALS Scan, 293 F.3d at 712). It is the first

prong that requires analysis of the defendant's "contacts" with the forum state to determine if

they meet the minimum requirements of constitutional due process. While the analysis of the

contacts is "not susceptible of mechanical application," Int'l Shoe Co., 326 U.S. at 319, the

<u>Consulting Engineers</u> court identified several factors that it and other courts have considered in

the business context:

- whether the defendant maintains offices or agents in the forum state;

- whether the defendant owns property in the forum state;

- whether the defendant reached into the forum state to solicit or initiate business;

- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;

- whether the parties contractually agreed that the law of the forum state would govern disputes;

- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;

- the nature, quality and extent of the parties' communications about the business being transacted; and

- whether the performance of contractual duties was to occur within the forum.

<u>Consulting Engineers</u>, <u>supra</u>, 566 F.3d at 278 (citations omitted).  With the arguable exception of

the fifth factor (choice of law),[8] none of these factors is present with respect to Bell Canada's

activities in this case.  As already discussed, Bell Canada does no business in Maryland, has no

property in Maryland, and employs no one in Maryland.  <u>See</u> Exh. B (Dussault Aff.) at ¶ 6.

Moreover, the alleged contract between the parties (the EULA) would have been performed, if at

all, in Canada, where the software is used.  Finally, Bell Canada has found no record of any

---

[8]       The EULA purports to choose Maryland to "govern" the EULA:

> If Licensee acquires Software in North America, the Laws of the State of
> Maryland govern this License Agreement.

EULA (Exh. A) at ¶ 17.  As stated above, and solely for the purposes of this motion, Bell Canada assumes that it is a
"Licensee" under the EULA, and it assumes that the Software was purchased in North America.

direct communications with Micro Focus in Maryland,[9] see Affidavit of Robert Beauchamp,

attached as Exhibit D at ¶ 4, so that the issue of the "extent of communication" is moot.  If and to

the extent that the EULA's choice of law language is considered to be binding on Bell Canada,

that fact would not change the due process analysis.  The inclusion of a choice of law clause is a

relevant factor but, by itself, "would be insufficient to confer [personal] jurisdiction."  Burger

King, 471 U.S. at 482.  Thus, in Consulting Engineers the fact that the parties had identified

Virginia law to control disputes did not confer jurisdiction in Virginia, over an entity domiciled

in India, even though the Indian defendant had communicated by telephone and email, and had

exchanged draft documents, with the plaintiff in Virginia.  As the Fourth Circuit observed, the

choice of law clause is one factor to consider, "but it is no more than that."  Consulting

Engineers, 561 F.3d at 281.  Because Bell Canada's contacts with Maryland are virtually

nonexistent, and because the choice of law provision cannot confer jurisdiction by itself, Micro

Focus will be unable to establish that Bell Canada "purposely availed itself of the privilege of

conducting activities" in Maryland, the first prong of the three-part test for specific jurisdiction.

Moreover, the activities that give rise to the plaintiffs' claims do not arise out of any Bell

Canada "activities" directed at the State of Maryland, as required by the second prong of the test.

See Consulting Engineers, 561 F.3d at 278.  The Software is located on servers in Montreal,

where it is used in the operation of Conso.  To the extent that Bell has made purchases in

connection with the Software[10] (it has purchased additional user authorizations) those purchases

were in Canada:  the user authorizations were purchased from the Canadian office of Amdocs's

---

[9]      Bell Canada has been able to locate invoices for a few transactions by which Bell Canada apparently purchased some services from the Toronto, Canada, office of Micro Focus (Canada) Limited, a Canadian corporation.  Exh. D (Beauchamp Aff.) at ¶ 5.
[10]      Prior to 2005, Amdocs owned all of the hardware and software used to operate Conso.  In about 2005, Bell Canada purchased components of Conso, including third-party software, from Amdocs (although Amdocs continued to operate Conso).  Thereafter, Bell Canada purchased its third-party software requirements from, and on the recommendation of Amdocs.  See Exh. C (Delage Aff.) at ¶ 9.

affiliate, ACMS, and any activation of the users would have been performed by Amdocs on the servers in Montreal. See Exh. C (Delage Aff. at ¶ 9). To the extent that Micro Focus alleges that Bell Canada's use of the Software was improper, that use would have occurred in Canada, and, in any event, not in Maryland.

Because the first two elements of the test are not met, analysis of the third point is not necessary. Nonetheless, the Fourth Circuit's observations regarding the Indian defendant in Consulting Engineers are equally applicable to the Canadian defendant in this case:

> The third prong of the specific jurisdiction test also likely weighs against exercising personal jurisdiction over Geometric, an Indian corporation. As the Supreme Court explained, "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."

Consulting Engineers, 561 F.3d at 282, n.12 (quoting Asahi, 480 U.S. at 114).

### b.   General jurisdiction.

A plaintiff's burden of establishing "general jurisdiction" over a nonresident defendant is substantial, and more stringent than in the case of specific jurisdiction. Where the defendant's contacts in the forum state do not form the factual basis for the plaintiff's suit, "then jurisdiction over the defendant must arise from the defendant's general, more persistent . . . contacts with the State" and those contacts must have been "continuous and systematic." Carefirst, 334 F.3d at 397. See also, Helicopteros, 466 U.S. at 414 n.9. Because Bell Canada conducted no business activities in Maryland, it follows that it did not engage in the "continuous and systematic" activities required to invoke the "general jurisdiction" of this Court.

Exercise of this Court's jurisdiction over Bell Canada is not permitted under either the Maryland long-arm statute or the Fourteenth Amendment of the U.S. Constitution.

**C.     The EULA Does Not Provide a Basis for the Assertion of Personal Jurisdiction Over Bell Canada.**

As addressed at the outset, the EULA contains language relating to jurisdiction.  For the purposes of this motion, Bell Canada assumes that Micro Focus will assert that the language is an enforceable "forum selection" clause that identifies "Maryland" as the exclusive jurisdiction for dispute resolution.  Micro Focus would be wrong on both counts.

**1.     Forum Selection Clauses, Generally.**

Forum selection clauses allow parties to designate, in advance, the forum in which their dispute will be heard.  See Nat'l Equipment Rental, Ltd. v. Szukhent, 375 U.S. 311, 315-16 (1964).  Although disfavored by the courts for nearly a century, in the landmark decision of M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972), the Supreme Court ruled that forum selection clauses are prima facie valid and presumptively enforceable.  As the Fourth Circuit recently observed "a valid forum selection clause . . . may act as a waiver to objections to personal jurisdiction."  Consulting Engineers, 561 at 282 n.10.  See also Koch v. Am. Online, Inc., 139 F.Supp.2d 690, 693; Gilman v. Wheat, First Securities, Inc., 345 Md. 361, 377-78, 692 A.2d 454, 462-63 (1997).

Although forum selection clauses are presumptively enforceable, that presumption is not absolute, and is overcome by a showing that they are "'unreasonable' under the circumstances."  Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996) (quoting M/S Bremen, 407 U.S. at 10).  Choice of forum provisions will be found unreasonable when:

> (1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes be deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

Id. (quoting Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991); M/S Bremen, 407 U.S. at 12-13, 15, 18).

In interpreting M/S Bremen, federal courts have added an additional requirement: that the existence of the clause must have been "reasonably communicated" to the parties. See D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 103 (2d Cir. 2006); Spataro v. Kloster Cruise, Ltd., 894 F.2d 44, 45-46 (2d Cir. 1990) (per curiam). Whether a forum selection clause was reasonably communicated is a question of law for the court to determine. Spataro, 894 F.2d at 45-46; Hodes v. S.N.C. Achille Lauro Ed Altri-Gestione, 858 F.2d 905, 908 (3d Cir.1988), petition for cert. dismissed, 490 U.S. 1001 (1989), abrogated on other grounds, Lauro Lines, S.R.L. v. Chasser, 490 U.S. 495 (1989).

The first step in evaluating the enforceability of a forum selection clause is to determine whether state or federal law should be applied. Koch, 139 F. Supp. 2d at 693. "If jurisdiction over the underlying action is based on a federal question, federal law controls the evaluation of the forum selection clause." Id. at 692-93 (citing Eisaman v. Cinema Grill Systems, Inc., 87 F. Supp. 2d 446, 448 (D. Md. 1999)). Where a case is based on diversity jurisdiction, the Fourth Circuit instructs that the relevant state law is to be applied. Id. at 693 (citing Eisaman, 87 F. Supp. 2d at 448). This case was brought in Maryland, and the EULA, assuming its applicability here, provides that the laws of Maryland shall apply to any disputes between the parties. Exh. A (EULA) at § 17. Accordingly, Maryland law would apply, absent a federal question.[11] Ultimately, though, the analysis comes down to federal law regarding forum selection clauses because Maryland has adopted the federal standard for evaluation of those clauses. Koch, 139 F.3d at 693 (citing Gilman, 345 Md. at 377-78).

---

[11]     As discussed in note 7, supra, the federal infringement claim is suspect, at best.

### 2.  The forum selection clause in the EULA cannot operate to confer jurisdiction over Bell Canada in this case.

The fatal flaw in any reliance by Micro Focus on the EULA to impose jurisdiction in this case is that the forum selection language is ambiguous (indeed, nonsensical), such that enforcement would be unreasonable and unjust under the authorities cited below.

Forum selection clauses that are ambiguous, or are nonsensical, cannot be construed as a consent by the putative defendant to be haled into a foreign court.  It is well-settled that "forum selection clauses should be clear and specific."  Western Refining Yorktown, Inc. v. BP Corp. N. Am., Inc., 618 F. Supp. 2d 513, 521-22 (E.D. Va. 2009) (citing Whirlpool Corp. v. Certain Underwriters at Lloyd's London, 662 N.E.2d 467, 471 (Ill. App. 1996) ("If parties to a contract agree to try their case in a specific forum they could be giving up important rights.  At the same time, a forum selection clause seeks to bind a state to try a case it otherwise might not want.  Good policy dictates that a true forum selection clause should be clear and specific.").  See also Hunt Wesson Foods, Inc. v. Supreme Oil Co., 817 F.2d 75, 77 (9th Cir. 1987) ("In cases in which forum selection clauses have been held to require litigation in a particular court, the language of the clauses clearly required exclusive jurisdiction" in that court); BP Marine Ams. v. Geostar Shipping Co., N.V., 1995 WL 131056 at *4 (E.D. La. Mar. 22, 1995) (concluding that the forum selection clause was sufficiently vague to render it unenforceable); Saxena v. Virtualabs, Inc., 2002 WL 992636 at *2 (N.D. Ill. May 15, 2002) ("a forum selection clause must clearly express an intent that the chosen forum is both compulsory and exclusive . . . . the intent of the parties to foreclose suit in any forum other than that named in the agreement must be evident from the contractual language"); Eisenbud v. Omnitech Corporate Solutions, Inc., 1996 WL 162245, at *1 (Del. Ch. 1996) ("parties should not be bound forever to a static forum selection process unless unequivocal language expresses that intention so clearly that a court

could not interpret the professed forum selection clause otherwise"); <u>JHB Resource</u>

<u>Management, LLC v. Henkel Corp.</u>, 2006 WL 1681079, *2 (Conn. Super. 2006) (refusing to

enforce forum selection clause that was, as written, nonsensical); 14D Charles Alan Wright,

Arthur R. Miller & Edward H. Cooper, <u>Federal Practice and Procedure</u> § 3803.1, at 131 (3d ed.

1998) ("[M]andatory forum selection clauses contain clear language indicating that jurisdiction

and venue are appropriate exclusively in the designated forum").

   The forum selection clause contained in the EULA provides as follows:

> If Licensee acquires the Software in North America, the laws of
> the state of Maryland govern this License Agreement. If Licensee
> acquires the Software in France, Germany or Japan, this License
> Agreement is governed by the laws of the country in which
> Licensee acquired the Software. In the rest of the world the laws
> of England govern this License Agreement . . . . This License
> Agreement shall be subject to the exclusive jurisdiction of the
> courts of the country determining the applicable law as aforesaid.

Exh. A (EULA) at ¶ 17.  While the reader of this passage may be able to discern a "selected

forum" for disputes involving software purchased in, say, Japan (Japanese courts would resolve

them), the language regarding software purchased in North America is an unintelligible <u>non</u>

<u>sequitur</u>.  According to the EULA, the forum is to be the "courts of the <u>country</u> determining the

applicable law as aforesaid," (emphasis added), but the "aforesaid" in this case would

presumably refer back to the first-quoted sentence, dealing with North American purchases, and

that sentence only mentions the "state of Maryland."  But, Maryland is not a "country," indeed

no "country" is mentioned in the sentence that is supposed to identify the forum for resolution of

disputes arising from North American sales.[12]  Thus, the clause is silent as to a forum selected

for disputes that are presumably at issue here.  It is no answer to this point to say that Maryland

is "mentioned," or that the purported licensee should have asked for clarification--a court may

---

[12]  The only "country" in North America in which Bell Canada could be seen to have "acquire[d] the Software" is Canada.

not add or infer terms that are made unclear by "inartful drafting," see Evergreen Nat'l Indem. Co. v. Capstone Bldg. Corp., 2008 WL 349457 at *3 (D. Conn. Feb. 6, 2008); County Comm'rs v. Forty W. Builders, Inc., 178 Md. App. 328, 379, 941 A.2d 1181, 1210 (2008) (citing Robinson v. Gardiner, 196 Md. 213, 217, 76 A.2d 354, 356 (1950) ("If the agreement be so vague and indefinite that it is not possible to collect from it the intention of the parties, it is void because neither the court nor jury could make a contract for the parties"), and "mentioning" a jurisdiction hardly comports with the universal requirement that the identification of a selected forum must "clear and specific." See cases cited at 17-18, supra.

Micro Focus's own communications with Bell Canada demonstrate that the language of the EULA regarding forum selection is, at the least, confusing. First, in a presuit demand letter from Micro Focus to Bell Canada, Micro Focus advised Bell Canada that, absent a resolution, Micro Focus would initiate litigation in the U.K. or Canada; there was no mention of Maryland. Affidavit of Michael Cole, attached as Exh. E at ¶ 5. Second, in a new EULA, sent to Bell Canada the day after the filing of this case, the language of paragraph 17 had been changed to read "If Licensee acquires the Micro Focus Software in North America . . . [the Agreement] shall be subject to the exclusive jurisdiction of the courts of the State of Maryland." Id. (Cole Aff.) at Exh. A ¶ 17. Unlike the EULA on which suit was brought, the identification of Maryland as the operative forum in this new proposed EULA is now "clear and specific" as required by the cases. Micro Focus clearly realized that its forum selection language was problematic. Micro Focus's own confusion about where suit would be appropriate, and its apparent attempt to clean up the EULA language, after suit was filed, is further evidence of the lack of clarity and imprecision in the EULA's forum selection language.

As is true with any contract in Maryland, or elsewhere, ambiguities are created at the drafter's own peril--courts routinely construe them against the drafter. See G.E. Tignall & Co. v. Reliance Nat'l Ins. Co., 102 F. Supp. 2d 300, 304 (D. Md. 2000) (citing Sullins v. Allstate Ins. Co., 340 Md. 503, 508, 667 A.2d 617, 619 (Md. 1995) (stating the general rule that in Maryland, ambiguities in a contract are construed against the drafter). "[A]mbiguities in forum selection clauses, like ambiguities in other contractual provisions, are to be construed against the drafter." Brickwood Contractors, Inc. v. City of Durham, 1997 U.S. Dist. LEXIS 6186 at *3 (M.D.N.C. August 18, 1998).[13] See also Powersdine, Inc. v. Broadcom Corp., 2008 WL 268808 at *4 (construing ambiguities in forum selection clause against drafter); Caldas & Sons, Inc. v. Willingham, 17 F.3d 123, 127 (5th Cir. 1994) (holding that an ambiguous clause that did "not clearly indicate that the parties intended to declare Zurich to be the exclusive forum for the adjudication of disputes," should be construed against the drafter). There can be no question in this case that Micro Focus was the drafter of the EULA: it is on Micro Focus's form, and appears to be a generic form, not tailored for a specific use or transaction. Micro Focus "cannot have the benefit of an ambiguous provision when it is responsible for the ambiguity." See Brickwood, 1997 U.S. Dist. LEXIS 6186 at *3. Rather, the language at issue must be construed against Micro Focus.

Notably, the language of the forum selection clause is not just ambiguous (that is, subject to more than one meaning, see G.E. Tignall, 102 F. Supp. 2d at 305) it is nonsensical. Where, as here, "inartful drafting makes the parties' intent impossible to discern," courts have refused to find the language sufficient to create "mandatory, exclusive and sole jurisdiction." Evergreen, 2008 WL 349457 at *9. And, where the forum selection clause at issue makes no sense as written, it will not be enforced as a bar to an objection to personal jurisdiction. See e.g., Waste

---

[13]     In accordance with Local Rule 105.5, a copy of Brickwood is provided in the Appendix.

Services, LLC v. Red Oak Sanitation, Inc., 2008 WL 2856459 at *2 (D. Utah July 23, 2008); IFC

Credit Corp. v. Warner Robbins Supply Co., Inc., 2005 U.S. Dist. LEXIS 26450 at *10 (N.D. Ill.

Oct. 25, 2005);[14] Evergreen, 2008 WL 349457 at *7.

In Evergreen, 2008 WL 349457 at *1, the court was asked to apply the following

forum selection clause:

> This subcontract shall in all respects be governed by, and
> construed in accordance with the laws of the state where the work
> is to be performed.  Notwithstanding the foregoing the parties
> hereto irrevocably submit to the jurisdiction of the Circuit Court of
> Jefferson County, Alabama in any action or proceeding shall be
> heard and determined in the Circuit Court of Jefferson County,
> Alabama. . . .

(Emphasis added.)

In analyzing the enforceability of the clause that "ma[de] no sense as written," the court

went on to reject the drafting party's attempt to read into the clause the word "in" as the word

"and," so that the final clause of the section would read "and any action or proceeding shall be

heard and determined in the circuit court of Jefferson County," because it was not the only

possible reading. Id. at *3.  Indeed, the court noted, it was equally conceivable that the parties

intended the clause to provide: "the parties hereto hereby irrevocably submit to the jurisdiction of

the circuit court of Jefferson county, Alabama in any action or proceedings [that] shall be heard

and determined in the circuit court of Jefferson County, Alabama." Id.  Because "inartful

drafting makes the parties' intent impossible to discern," the court refused to "infer terms the

parties obviously would have agreed upon if the omission had been brought to their attention."

Id.  Accordingly, the court concluded that the language was not sufficient to create "mandatory,

exclusive and sole jurisdiction. [H]ad the parties intended to confer exclusive jurisdiction on the

---

[14]     In accordance with Local Rule 105.5, a copy of IFC Credit is provided in the Appendix.

Circuit Court of Jefferson County, Alabama, they easily could have done so.  Absent such clear

language, the court cannot conclude that such intention existed."  Id. at *4.

Similarly, in IFC Credit, the Court was asked to enforce the following unintelligible

forum selection clause:

> This agreement shall be governed by, construed and enforced in
> accordance with the laws of the State in which Rentor's principal
> offices are located or, If this Lease is assigned by Rentor, the State
> in which the assignee's principal offices are located, without
> regard to such State's choice of law considerations and all legal
> actions relating to the Lease shall be venued exclusively in a state
> or federal court located within that State, such court to be chosen at
> Rentor or Rentor's assignee's sole option. . . .

2005 U.S. Dist. LEXIS 26450 at *2.  In concluding that the foregoing clause was unenforceable,

the Court noted that "no one--probably not even the original lessor--could discern at the time of

contracting in what forum disputes should be brought."  Because the purported forum selection

clause contained "no clear and specific" selection of a forum, the court refused to enforce it.  Id.

Enforcement of the unintelligible forum selection clause in the EULA is particularly

inappropriate in light of the importance of the waiver of an objection to personal jurisdiction.

"[B]ecause forum selection clauses may result in a waiver of substantive and procedural rights, it

would be unfair to infer such a significant waiver absent a clear indication of intent through a

party's actions."  Ferraro Foods v. M/V Izzet Incekara, 2001 WL 940562 (S.D.N.Y. Aug. 20,

2001); see also IFC Credit, 2005 U.S. Dist. LEXIS 26450 at *10 ("Parties who agree to litigate

in a specific forum do so knowing they may be giving up important rights, but when no forum is

specified, parties have no way to know what rights they are giving up"); Whirlpool Corp., 662

N.E.2d at 471.  Indeed, under Maryland law, waiver is the intentional relinquishment of a known

right.  MJ Harbor Hotel, LLC v. McCormick & Schmick Rest. Corp., 599 F. Supp. 2d 612, 621

n.10 (D. Md. 2009) ("[T]here can be no waiver unless the person against whom the waiver is

claimed had full knowledge of his rights, and of facts which will enable him to. . . enforce. . . such rights.") (quoting <u>Taylor v. Mandel</u>, 250 Md. 662, 667-68, 245 A.2d 301, 304 (1968)); <u>Harold H. Huggins Realty, Inc. v. FNC, Inc.</u>, 575 F. Supp. 2d 696, 713 (D. Md. 2008) ("Waiver presupposes full knowledge of a right existing, and an intentional surrender or relinquishment of that right. It contemplates something done designedly or knowingly, which modifies or changes existing rights"); <u>Maynard v. Westport Ins. Corp.</u>, 208 F. Supp. 2d 568, 576 (D. Md. 2008). <u>See also</u> <u>Doe v. Kidd</u>, 501 F.3d 348, 354 (4th Cir. 2007) ("[F]ederal law is well-settled that waiver is the voluntary and intentional relinquishment of a known right, and courts have been disinclined lightly to presume that valuable rights have been conceded in the absence of clear evidence to the contrary.") (quoting <u>United States v. Stout</u>, 415 F.2d 1190, 1192-93 (4th Cir. 1969). Because the forum selection clause does not clearly express an intent to litigate in Maryland, Bell Canada cannot be said to have intentionally relinquished the right to object to this Court's personal jurisdiction over it.

The ambiguous, nonsensical forum selection clause in the EULA should not be enforced (and cannot be enforced) to confer jurisdiction over the Canadian defendant in this case.

## CONCLUSION

Bell Canada has done nothing to submit itself to the jurisdiction of this Court. It has transacted no business in Maryland and, the existence of the EULA notwithstanding, has done

nothing to agree to jurisdiction or to waive its right to contest jurisdiction.  The amended

complaint must be dismissed pursuant to Rule 12(6)(2) of the Federal Rules of Civil Procedure.

/s/
—————————————————————
William C. Sammons, Bar No. 02366
John B. Isbister, Bar No. 00639
Kristin P. Herber, Bar No. 27125
  Tydings & Rosenberg LLP
  100 East Pratt Street
  26th Floor
  Baltimore, Maryland  21202
  Phone:  410-752-9700
  Facsimile:  410-727-5460

Attorneys for Defendant
Bell Canada