# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND
### (Southern Division)

MICRO FOCUS (US), INC., *et al.*,　　　　*

　　　　Plaintiffs,　　　　*

　　　　v.　　　　*　　　Civil Action No. RWT-09-1085

BELL CANADA　　　　*

　　　　Defendant.　　　　*

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Andrew Jay Graham, Bar No. 00080
Geoffrey H. Genth, Bar No. 08735
Ezra S. Gollogly, Bar No. 28088
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiffs

Dated: November 3, 2009.

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     STANDARD OF REVIEW .................................................................................. 3

III.    STATEMENT OF FACTS ................................................................................... 4

IV.     APPLICABLE LAW ........................................................................................... 5

        A.      General Principles Of Contract Interpretation Under Maryland Law ......... 5

        B.      Maryland And Federal Law Concerning Forum-Selection Clauses ............ 8

V.      ARGUMENT ..................................................................................................... 17

        A.      Notwithstanding Bell Canaga's Hyper-Technical Argument, The
                EULA's Meaning Is Very Clear When § 17's Language Is Interpreted
                In Its Entirety And In Its Real-World Commercial Context ...................... 17

        B.      Bell Canada's Argument Is Inconsistent With Governing Authority
                On The Interpretation Forum-Selection Clauses ....................................... 19

        C.      Bell Canada's Motion Relies On Inapplicable Law And On
                Irrelevant And Inadmissible Evidence ....................................................... 21

                1.      Inapplicable Law  ........................................................................... 21

                2.      Irrelevant And Inadmissible Evidence ........................................... 24

VI.     CONCLUSION .................................................................................................. 25

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs Micro Focus (US), Inc. and Micro Focus (IP), Ltd., by their undersigned counsel, submit the following points and authorities in opposition to Defendant's motion to dismiss the Amended Complaint for lack of personal jurisdiction:

## I.   INTRODUCTION

The Plaintiffs in this case are U.S. and English subsidiaries of Micro Focus International plc, an English corporation that develops, manufactures, sells, and services computer software to and for thousands of business customers around the world.  The U.S. subsidiary is headquartered in Rockville, Maryland.  The Defendant, Bell Canada, is the leading Canadian telecommunications company.

This case arises from Bell Canada's pervasive violations of an End User License Agreement ("EULA") that Bell Canada entered into in connection with its purchase and use of Plaintiffs' proprietary software.  Plaintiffs seek compensatory damages in excess of $4.7 million.

Consistent with Micro Focus' and its customers vital interests in managing the risks of modern international commerce, § 17 of the pertinent EULA, a copy of which is attached hereto as Ex. 1, broadly divides the world into five zones for purposes of both choice-of-law and forum selection:

> (1) if the software is acquired in North America, Maryland law applies, and exclusive jurisdiction is in the federal courts of the United States of America;

(2) if the software is acquired in France, French law applies, and exclusive jurisdiction is in the courts of France;

(3) if the software is acquired in Germany, German law applies, and exclusive jurisdiction is in the courts of Germany;

(4) if the software is acquired in Japan, Japanese law applies, and exclusive jurisdiction is in the courts of Japan; and

(5) if the software is acquired outside of North America, France, Germany, or Japan, English law applies, and exclusive jurisdiction is in the courts of England.

Plaintiffs filed this lawsuit on April 29, 2009.  After demanding formal service pursuant to the Hague Convention, which took many months and required Plaintiffs to have the Amended Complaint translated into French, Bell Canada responded to Plaintiffs' Amended Complaint on October 5, 2009, by filing a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2).

Implicitly conceding that enforcement of the forum-selection clause would not otherwise be unreasonable or unjust, Bell Canada's motion argues (at 2, 20) that the clause is "hopelessly ambiguous" and "nonsensical," and therefore cannot be construed as a consent to personal jurisdiction in a court of the United States.  Bell Canada further argues that, assuming that the EULA's forum-selection clause was unenforceable, Bell Canada would lack sufficient contacts with the State of Maryland to satisfy either Maryland's Long Arm Statute[1] or the pertinent constitutional requirements.

---

[1]     Md. Cts. & Jud'l Proc. Code Ann. § 6-103(b).

Bell Canada's motion should be denied.  The EULA's forum-selection clause has a plain meaning, and obviously confers jurisdiction on this Court.  In contrast, Bell Canada's allegation of semantic ambiguity is unreasonable and unpersuasive.  Bell Canada's argument violates the entire clause's plain meaning and intent in the real-world context of international commerce, and renders the clause meaningless as to software acquired in North America.  Consequently, Bell Canada's argument is inconsistent not only with Maryland's general principles of contract interpretation, but also with the great weight of authority interpreting forum-selection clauses more particularly.

Because an enforceable forum-selection clause is a waiver of a party's jurisdictional objections, Bell Canada's alternative contentions concerning long-arm jurisdiction and minimum contacts are moot to the extent that the EULA's forum-selection clause is enforceable.  In any event, for purposes of this motion only, the Plaintiffs do not contest Bell Canada's contentions regarding the long-arm statute and constitutional "minimum contacts."  Accordingly, this Court can and should deny Bell Canada's motion exclusively on the basis of the EULA's valid and enforceable forum-selection clause.

## II.   **STANDARD OF REVIEW**

As Judge Chasanow recently summarized in *Costar Realty Information, Inc. v. Meissner*, 604 F. Supp. 2d 757, 763-64 (D. Md. 2009):

> When a court's power to exercise personal jurisdiction over a nonresident defendant is challenged by a motion under Federal Rule of Civil Procedure 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden ultimately to prove grounds for jurisdiction by a

> preponderance of the evidence." . . . . If the court chooses to
> rule without conducting an evidentiary hearing, relying solely
> on the basis of the complaint, affidavits and discovery
> materials, "the plaintiff need only make a prima facie showing
> of personal jurisdiction." . . . . In determining whether the
> plaintiff has proven a prima facie case of personal
> jurisdiction, the court "must draw all reasonable inferences
> arising from the proof, and resolve all factual disputes, in the
> plaintiff's favor."

(Citations omitted.)

## III.   STATEMENT OF FACTS

Micro Focus International plc (LSE: MCRO.L) is listed on the London Stock Exchange and is a member of the FTSE 250. *See* affidavit of Nicola Bucknall, attached hereto as Ex. 2, ¶ 3. Micro Focus is a global software and information technology business with principal offices in the United Kingdom, United States, Germany and Japan. *Id.* Further offices include Belgium, Bulgaria, Denmark, Finland, France, Germany, Israel, Italy, Netherlands, Norway, Portugal, Spain, Sweden, Switzerland, Canada, Mexico, Australia, Singapore, Brazil, China, India. *Id.* Founded in 1976, Micro Focus has over 15,000 customers, including more than 70 of the Fortune Global 100 companies, and one million licensed users. *Id.*

Micro Focus provides software, maintenance and consultancy services. Ex. 2, ¶ 4. Its software enables customers to update legacy systems to more modern platforms. *Id.* Micro Focus' software allows companies to develop, test, deploy, assess and modernize business-critical enterprise applications. *Id.* Micro Focus' software enables customers' business applications to respond rapidly to market changes and embrace modern architectures with reduced cost and risk. *Id.*

Micro Focus relies on a EULA to identify and manage the rights and duties associated with the licensed use of its software. Ex. 2, ¶ 5. The licensing terms and restrictions of the EULA for the software at issue here – Application Server for Server Express – are the same for all of Micro Focus' customers around the world, subject to translation. *Id*. In other words, Micro Focus does not have one set of licensing terms and restrictions of the EULA for companies who use the software in the United Kingdom, and another set of licensing terms and restrictions of the EULA for companies who operate in Spain. *Id*. Instead, Micro Focus uses one set of licensing terms and restrictions of the EULA to govern the worldwide use of Application Server for Server Express. *Id*. Micro Focus' standard EULA is revised from time to time to reflect changes in technology. Later version products have later version EULAs applicable to them. *Id*.

Micro Focus' business records demonstrate that between 2005 and 2008, Bell Canada purchased in excess of 8,000 "User Licenses for Authorized Users" for Application Server for Server Express from Micro Focus. Ex. 2, ¶ 9. Micro Focus' business records further demonstrate that each of those licenses is governed by the EULA that is attached hereto as Ex. 1. *Id*.

## IV.   APPLICABLE LAW

### A.   General Principles Of Contract Interpretation Under Maryland Law

The parties agree that, because the Plaintiffs' claim for breach of the EULA arises under Maryland common law and invokes the Court's diversity jurisdiction, Maryland contract law applies to interpretation of the EULA's forum-selection clause. *See Koch v. America Online, Inc.*, 139 F. Supp. 2d 690, 693 (D. Md. 2000) (Blake, J.).

Under well-established principles of Maryland law, the interpretation of a written contract is a question of law for the court. *See, e.g., Nova Research, Inc. v. Penske Truck Leasing Co.*, 405 Md. 435, 448 (2007). "Maryland follows the objective law of contract interpretation and construction." *Tomran, Inc. v. Passano*, 391 Md. 1, 13 (2006). "'A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id*. (Citation omitted.) "A word's ordinary signification is tested by what a reasonably prudent layperson would attach to the term." *Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 330 Md. 758, 778 (1993).

"A contract is ambiguous if, when read by a reasonably prudent person, it is susceptible of more than one meaning." *Diamond Point v. Wells Fargo*, 400 Md. 718, 751 (2007). In determining whether a reasonable person could assign more than one meaning to the words of a contract, the court "considers 'the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.'" *8621 Ltd. P'ship v. LDG, Inc.*, 169 Md. App. 214, 226, *cert. denied*, 394 Md. 480 (2006). A "disputed term must be considered in context." *Phoenix Ltd. P'ship v. Johns Hopkins Hospital*, 167 Md. App. 327, 393, *cert. denied*, 393 Md. 24 (2006). "Notably, a contract is not ambiguous merely because the parties do not agree as to its meaning." *Maslow v. Vanguri*, 168 Md. App. 298, 319, *cert. denied*, 393 Md. 478 (2006); *accord Virtual Physical Center-Rockville, LLC v. Phillips Medical Sys. N. Am., Inc.*, 478 F. Supp. 2d. 840, 850 (D. Md. 2007) (Blake, J.) (applying Maryland law).

Maryland law disfavors contract interpretations that lead to absurd results.

"[W]here a contract is susceptible of two meanings, one of which would produce an

absurd result and the other of which would carry out the purpose of the agreement, the

latter construction should be adopted." *Ensor v. Wehland*, 243 Md. 485, 492 (1966);

*Chicago Title Ins. Co. v. 100 Inv. Ltd. P'ship*, 355 F.3d 759, 764 (4th Cir. 2004)

(applying Maryland law).

Likewise, Maryland courts disfavor contract interpretations that nullify contract

terms. In *Heist v. Eastern Savings Bank*, 165 Md.App. 144, 151 (2005), the Court of

Special Appeals recognized:

> There is a well established rule of contractual construction
> that where two provisions of a contract are seemingly in
> conflict, they must, if possible, be construed to effectuate the
> intention of the parties as collected from the whole
> instrument, the subject matter of the agreement, the
> circumstances surrounding its execution, and its purpose and
> design. And, if a reconciliation can be effected by a
> reasonable interpretation, such interpretation should be given
> to the apparently repugnant provisions, rather than nullify
> any.

(Citation omitted.) Maryland courts will not accept "'an interpretation which casts out or

disregards a meaningful part of the language of the writing unless no other course can be

sensibly and reasonably followed.'" *Diamond Point*, 400 Md. at 752 (citation omitted).

Although ambiguities are construed against a contract's drafter, Maryland courts

will not disregard contractual intent by actively searching out phantom ambiguity.

"Language that is merely general in nature or imprecisely defined is not necessarily

ambiguous." *Hartford Fire Ins. Co. v. Annapolis Bay Charters*, 69 F. Supp. 2d 756, 760

(D. Md. 1999) (Young, J.) (applying Maryland law). Rather, "[w]here a contract is

sufficiently clear, . . . a court's role in construction should be relatively minimal, and a contract should be enforced in light of its plain text." *Mid Atlantic Med'l Serv., Inc. v. Do,* 294 F. Supp. 2d 695, 700 (D. Md. 2003) (Garbis, J.) (applying Maryland law). Cases from the insurance-law context show that courts applying Maryland law focus on the reasonably-expressed contractual intent, and therefore do not, "as a matter of first resort," interpret contracts "most strongly" against the drafter. *See, e.g., Clendenin v. U.S. Fire Ins. Co.*, 390 Md. 449, 459 (2006).

### B.   Maryland And Federal Law Concerning Forum-Selection Clauses

Maryland has adopted the federal standard for determining the enforceability of forum-selection clauses. *See Gilman v. Wheat, First Securities, Inc.*, 345 Md. 361, 377-78 (1997). It is well-settled that a valid forum-selection clause may waive objections to personal jurisdiction. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 n. 14 (1985); *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 281 n. 11 (4th Cir. 2009); *Costar Realty Information, Inc. v. Field*, 612 F. Supp. 2d 660, 668 (D. Md. 2009) (Williams, J.); *Meissner*, 604 F. Supp. 2d at 764. "[P]articularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction." *Burger King, supra.*

In its landmark decision in *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972), the United States Supreme Court held that forum-selection clauses are presumptively enforceable absent a clear "showing that enforcement would be unreasonable and unjust, or that the clause was invalid for such reason as fraud or overreaching." The court reached this conclusion "in the light of present-day commercial

realities and expanding international trade." *Id.*

*The Bremen* arose from Zapata's hiring of a German company to tow Zapata's

ocean-going oil-rig from Louisiana into Italian waters in the Adriatic Sea. 407 U.S. at 3.

Zapata was an American company. *Id.* Although the parties' contract provided that "any

dispute arising must be treated before the London Court of Justice," when a disagreement

arose Zapata sued the German company in U.S. federal district court. *Id.* at 3-4.

Overturning lower-court rulings that favored U.S. jurisdiction, the Supreme Court

reasoned:

> There are compelling reasons why a freely negotiated private
> international agreement, unaffected by fraud, undue influence,
> or overweening bargaining power . . . should be given full
> effect. . . . In the course of [the rig's] voyage, it was to
> traverse the waters of many jurisdictions. The [rig] could
> have been damaged at any point along the route, and there
> were countless possible ports of refuge. . . . It cannot be
> doubted for a moment that the parties sought to provide for a
> neutral forum for the resolution of any disputes arising from
> the tow. Manifestly much uncertainty and possibly great
> inconvenience to both parties could arise if a suit could be
> maintained in any jurisdiction in which an accident might
> occur or if jurisdiction were left to any place where the
> Bremen or Unterweser might happen to be found. The
> elimination of all such uncertainties by agreeing in advance
> on a forum acceptable to both parties is an indispensable
> element in international trade, commerce, and contracting.

*Id.* at 12-13.

In *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), the Supreme Court

extended its ruling in *The Bremen* to uphold a forum-selection clause contained on tickets

purchased by a cruise-ship passengers. The court stated:

> In evaluating the reasonableness of the forum clause at issue

> . . . we must refine the analysis of *The Bremen* to account for
> the realities of form passage contracts. . . . Including a
> reasonable forum clause in a form contract of this kind well
> may be permissible for several reasons: First, a cruise line has
> a special interest in limiting the fora in which it potentially
> could be subject to suit. Because a cruise ship typically
> carries passengers from many locales, it is not unlikely that a
> mishap on a cruise could subject the cruise line to litigation in
> several different fora. . . . Additionally, a clause establishing
> *ex ante* the forum for dispute resolution has the salutary effect
> of dispelling any confusion about where suits arising from the
> contract must be brought and defended, sparing litigants the
> time and expense of pretrial motions to determine the correct
> forum and conserving judicial resources that otherwise would
> be devoted to deciding those motions. . . . Finally, it stands to
> reason that passengers who purchase tickets containing a
> forum clause like that at issue in this case benefit in the form
> of reduced fares reflecting the savings that the cruise line
> enjoys by limiting the fora in which it may be sued.

*Id*. at 593-94.

In *Gilman*, 345 Md. at 364, the Maryland Court of Appeals addressed a standard

brokerage agreement that provided for mandatory arbitration and contained the

customers' acknowledgment that they "were waiving their right to seek remedies in court,

including the right to jury trial." The agreement exempted class actions from the

arbitration requirement. *Id*. at 382. The agreement further provided that, "ANY

JUDICIAL PROCEEDING RELATING TO THE ARBITRATION OR TO THIS

AGREEMENT SHALL BE CONDUCTED IN STATE OR FEDERAL COURT IN

RICHMOND, VIRGINIA." *Id*. at 364-65.

The plaintiff-appellant in *Gilman* filed a putative class action in the Circuit Court

for Montgomery County. *Id*. at 363. Affirming the Circuit Court's dismissal of the

plaintiff-appellant's claim on the basis of the forum-selection clause, the Court of

Appeals discussed *The Bremen* and *Carnival* at length, before stating that:

> (1) a forum-selection clause is presumptively valid and
> enforceable and the party resisting it has the burden of
> demonstrating that it is unreasonable, (2) a court may deny
> enforcement of such a clause upon a clear showing that, in the
> particular circumstance, enforcement would be unreasonable,
> and (3) the clause may be found to be unreasonable if (i) it
> was induced by fraud or overreaching, (ii) the contractually
> selected forum is so unfair and convenient as, for all practical
> purposes, to deprive the plaintiff of a remedy or its day in
> court, or (iii) enforcement would contravene a strong public
> policy of the State where the action is filed.

*Id.* at 378. The *Gilman* court thus adopted the general principle set forth in § 80 of the

Restatement (Second) of Conflict of Laws (1971) (as amended 1988) that "[t]he parties'

agreement as to the place of the action will be given effect unless it is unfair or

unreasonable." *Id.*; *see also Secure Fin. Serv., Inc. v. Popular Leasing USA, Inc.*, 391

Md. 274, 284 (2006); *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996);

*Meissner*, 604 F. Supp. 2d at 765 (to avoid being bound by forum-selection clause,

nonresident defendant must bear "heavy burden of showing that its 'enforcement would

be unreasonable, unfair or unjust'") (citation omitted).

Applying the foregoing guidelines to the facts before it, the *Gilman* court rejected

the plaintiff-appellant's contention that, because Virginia apparently does not recognize

class actions, it was impractical for him to bring an individual action for injunctive relief

and damages for securities fraud. *Id.* at 382-83. Likewise, the court rejected an apparent

allegation of ambiguity made in the plaintiff-appellant's motion for reconsideration:

> Although, as was pointed out to us in Gilman's motion for
> reconsideration, the agreement exempts class action suits
> from the arbitration requirement, the forum-selection clause
> with respect to judicial proceedings was a part of the
> arbitration clause – it is not stated as a separate provision –
> and should, therefore, be read in the context of the arbitration
> remedy. When so read, it is reasonable to suppose that any
> judicial proceedings envisioned by the parties, more likely
> than not, would be proceedings to compel arbitration or to
> enforce an arbitral award.  Accordingly, when looking at the
> clause in the context of the parties' probable expectations, it
> would not seem that the unavailability of the class action
> procedure in Virginia was of much importance.

*Id.* at 382.[2]

Consistent with well-established interpretive rules, the overwhelming majority of courts do not treat language contained in forum-selection clauses as meaningless or redundant, and do not lightly find such clauses to be unenforceable on the ground of alleged ambiguity. *See, e.g., Sterling Forest Assoc., Ltd. v. Barnett-Range Corp.,* 840 F.2d 249, 250-52 (4th Cir. 1988), *abrogated on other grounds, Lauro Lines S.R.I. v. Chasser,* 490 U.S. 495, 497 (1989).  Applying Maryland law, this Court has consistently taken a logical, pragmatic approach to interpreting forum-selection clauses.

In her 2000 decision in *Koch,* 139 F. Supp.2d at 693, Judge Blake addressed a dispute over the alleged ambiguity of a clause providing that "exclusive jurisdiction for any claim or dispute resides in the courts of the Commonwealth of Virginia."  The Maryland plaintiff contended that the defendant's "use of the term 'resides' is fatally

---

[2]    Counsel for Bell Canada in this case also represented the plaintiff-appellant in *Gilman.*

ambiguous and defective," and that the defendant could "not point to a case in which a

provision employing that word was found mandatory." *Id*. at 693-94.[3]

Rejecting that plaintiff's allegation of ambiguity, Judge Blake held:

> . . . use of the word "resides," even if it might be
> objectionable, should not, in isolation determine the nature of
> the clause.
>
>        \*       \*       \*
>
> Rather, an examination of the clause in its entirety reveals
> that it is mandatory. The focus of the court's investigation
> should not be on [the defendant's] choice of the word
> "resides," but, rather, on its use of the phrase "exclusive
> jurisdiction" coupled with the designation of a specific forum
> . . . . That language indicates that the clause is mandatory.

*Id*. at 694.

More recently, Judge Bennett has issued a trio of decisions employing a practical

approach similar to Judge Blake's approach in *Koch*. In *Silo Point II LLC v. Suffolk*

*Constr. Co.*, 578 F. Supp. 2d 807, 808 (D. Md. 2008), the defendant moved to dismiss the

federal action on the ground that a clause requiring "[a]ny dispute between the parties" to

be "exclusively brought in the courts of the State of Maryland" meant that all disputes had

to filed in Maryland state courts. In opposition to the motion, the plaintiff argued that

"because only one state court, the Circuit Court for Baltimore City, could serve as an

appropriate venue for state actions between the parties, the plural use of 'courts' must

also refer to the United States District Court for the District of Maryland." *Id*. at 810.

---

[3]     A mandatory forum-selection provision contains "'clear language showing
that jurisdiction is appropriate only in the designated forum,'" and, on the other hand, a
permissive provision allows jurisdiction "in the designated forum without precluding it
elsewhere." *Id*. at 693 (citation omitted).

Rejecting the plaintiff's strained interpretation of the clause, Judge Bennett reasoned that,

"[t]he forum selection clause . . . is unambiguously expressed in terms of sovereignty and

therefore excludes federal courts. The term 'of' is commonly used in clauses to refer to

sovereignty and has been defined as 'denoting that from which anything proceeds;

indicating origin, source, descent.'" *Id*. at 810-11 (citation omitted).

Conversely, in his unreported decision in *MTBR LLC v. D.R. Horton, Inc.*, 2008

WL 3906768, *6 (D. Md. 2008), Judge Bennett held that venue was proper in either this

Court or the Circuit Court for Harford County where the pertinent clause provided that

"the exclusive forum . . . shall be the appropriate trial court for the jurisdiction in which

the Property is located." Judge Bennett reasoned that "[w]hen a forum selection clause

does not 'clearly and unambiguously' designate a state court over a federal court, a party

cannot be precluded from bringing suit in federal court." *Id*. (citation omitted.)

In a third decision involving a forum-selection clause, *Davis Media Group, Inc. v.

Best Western Int'l, Inc.*, 302 F. Supp. 2d 464, 467 (D. Md. 2004), Judge Bennett

addressed a dispute over the mandatory or permissive character of a clause providing that

"all suits . . . shall be subject to the jurisdiction of the Courts of the State of Arizona."

The Maryland plaintiff argued that the clause was permissive and served "only to prevent

either party from objection on jurisdiction or venue grounds to a suit brought in Arizona."

Citing the Fourth Circuit's decision in *Sterling*, Judge Bennett found that the use of the

word "shall" denoted a mandatory application, and therefore rejected the plaintiff's

argument that the clause was merely permissive. *Id*. at 467-68. Judge Bennett stated:

> The forum-selection clause . . . should not be treated as
> meaningless. The logical reason for including the forum-
> selection clause in the Agreement was to make jurisdiction
> and venue exclusive to Arizona. Any other interpretation
> would render the clause meaningless. . . . To hold that this
> language means that suit may be brought in Arizona "or
> elsewhere" would demean the express language of the
> Agreement.

*Id.* at 468.

Judge Blake's and Judge Bennett's above-referenced decisions – which recognize

the logical meaning of forum-selection clauses in their commercial context – are small

but significant parts of a well-developed body of rulings by numerous judges of this Court

and by the great majority other courts both inside and outside the Fourth Circuit. *See,*

*e.g., this Court's decisions in Acciali Speciali Terni USA, Inc. v. M/V Berane*, 181 F.

Supp. 2d 458, 464 (D. Md. 2002) (Smalkin, J.) (rejecting interpretation of clause that

would have resulted in gross inefficiency; the parties could not "have envisioned such a

result when they entered into" the contract); *and Eisaman v. Cinema Grill Systems*, 87 F.

Supp. 2d 446, 449-50 (D. Md. 1999) (D. Md. 1999) (Chasanow, J.) (rejecting allegation

of ambiguity, where clause provided that, at defendant's "option, jurisdiction and venue

for all litigation . . . related to this Agreement will be proper only in the United States

District Court for the Northern District of Georgia, Atlanta Division, or the Superior

Court for Fulton County, Georgia, depending on which court has subject matter

jurisdiction"; clause applied to "all litigation," not just to litigation that defendant

initiated); *the decisions by other district courts within the Fourth Circuit in Gita Sports*

*Ltd. v. SG Sensortechnik Gmbh & Co.*, 560 F. Supp. 2d 432, 436 (W.D.N.C. 2008) (even

without use of words "exclusive" or "sole," clause providing that "[t]he place of

fulfillment and court of venue is Morfelden-Walldor" was mandatory notwithstanding

dispute between the two sides' expert witnesses over correct interpretation); *Dan Dill,*

*Inc. v. Ashley Furniture Indus., Inc.*, 2008 WL 3287255, *3-*4 (W.D.N.C., Aug. 7, 2008)

(rejecting allegation of ambiguity, where the more reasonable interpretation supplied "a

complete meaning" and would not render the clause "useless"); *P.M. Enterprises v. Color*

*Works, Inc.*, 946 F. Supp. 435, 437-41 (S.D.W.Va. 1996) (despite clause's lack of word

"exclusive," use of the word "the" in clause designating forum as "the proper venue"

rendered clause mandatory; any other interpretation would render clause meaningless).[4]

---

[4]     *See also the decisions by district courts outside the Fourth Circuit in*
*Pacificorp v. Simplexgrinnell LP*, 2009 WL 3208008, *6-*7 (D. Or. Oct. 6, 2009)
(rejecting claim of alleged ambiguity where only one reading gave meaning to all words
of the clause; "the standard under which a contractual forum selection clause is reviewed
is ordinary principles of contract interpretation, not a clear and unequivocal standard");
*Wausau Stell Corp. v. Roper Whitney of Rockford, Inc.*, 2009 WL 2197368 (W.D. Wis.
July 23, 2009) (clause providing that venue for "any" action "shall be limited to Marathon
County, Wisconsin" held to unambiguously exclude federal removal jurisdiction;
defendant's contrary interpretation "is not objectively reasonable" because "[i]t would be
meaningless to include a forum selection clause referring to a specific county . . . if the
clause was suggesting both federal and state court jurisdiction"); *A.O. Smith Corp. v.
Transpac Container Sys. Ltd.*, 2009 WL 3001503, *3 (C.D. Cal. May 8, 2009) (". . . to the
extent that Plaintiffs contend that [the defendant] *could have* drafted its forum selection
clause in a different way so as to better identify Hong Kong court as the forum for
resolving disputes, the Court rejects that contention. . . .   There are certainly numerous
ways to draft a valid and enforceable forum selection clause and Plaintiffs have failed to
show how the mere fact that [the defendant] *could have* drafted its forum clause in a
different manner renders the clause ambiguous") (emphases in original); *First Lowndes
Bank v. KMC Group, LLC*, 2009 WL 174972, *3 (M.D. Ala. Jan. 26, 2009) (rejecting
allegation that clause was ambiguous because it could be read to refer to "no courts";
"[t]he court does not agree . . . that an interpretation that makes the contract refer to no
court at all is a reasonable one").

As all these decisions show, this Court and the vast majority of other courts are willing to recognize the useful, logical meaning and intent of forum-selection clauses, notwithstanding particular litigants' self-serving allegations of ambiguity and meaninglessness.

## V.   **ARGUMENT**

### A.   **Notwithstanding Bell Canada's Hyper-Technical Argument, The EULA's Meaning Is Very Clear When § 17's Language Is Interpreted In Its Entirety And In Its Real-World Commercial Context**

As set forth above, the EULA's choice-of-law and forum-selection provisions operate in tandem to eliminate uncertainty and complexity by dividing the globe into five zones. The choice-of-law provisions state: (a) if software is acquired in France, Germany, or Japan, the laws of that country apply; (b) if the software is acquired in North America, Maryland law applies; and (c) if the software is acquired anywhere else in the world, English law applies. Ex. 1, § 17.

In turn, the EULA's forum-selection provision provides, "[t]his License Agreement shall be subject to the exclusive jurisdiction of the courts of the country determining the applicable law as aforesaid." Ex. 1, § 17. Because Maryland is a part of the United States, the only logical interpretation is that, if the software is acquired in North America, Maryland law applies and "exclusive jurisdiction" shall be in the courts "of" the United States, *i.e.*, the federal district courts. *See Silo Point*, 139 F. Supp. 2d at 810-11 (the word "of" denotes sovereignty rather than geography). Such a plain-meaning interpretation of the North American provision is in harmony with the EULA's provisions regarding the other four zones that the EULA creates. The language's manifest intent is

to divide the world into five zones for purposes of both choice-of-law and forum selection.

Bell Canada cannot and does not offer any realistic reason why the EULA would have divided the world into five zones for purposes of choice-of-law, but assigned exclusive jurisdictions for litigation to only four of those zones. Rather than offering a logical interpretation of the forum-selection clause, Bell Canada (at 20) disparagingly labels the clause "nonsensical," *i.e.*, meaningless.

Bell Canada's argument flies in the face of the numerous well-established guidelines for the interpretation of contracts under Maryland law that are discussed above in section IV.A. Bell Canada's argument is divorced from "what a reasonable person in the position of the parties would have meant at the time" Bell Canada purchased the pertinent licenses. *See Tomran*, 391 Md. at 13.[5] Bell Canada strains credulity by asserting that a reasonable businessperson in the contracting parties' position could have interpreted the EULA in the manner that Bell Canada now advocates. Tellingly, although Bell Canada supports its motion with four affidavits, none of them asserts that, at the time it was acquiring the pertinent software (evidently in Canada), its agents somehow interpreted the EULA as being "silent as to a forum selected" for disputes arising from the EULA on the ground that Maryland is only a part of a country, rather than being a

---

[5]    The EULA must be interpreted from the lay perspectives of the international parties, rather than from the potentially different perspective of U.S. citizens with extensive legal training and experience in the U.S.'s federal system of government. *See Bausch & Lomb*, 330 Md. at 778 ("ordinary signification tested" from perspective of "a reasonably prudent layperson").

country *per se*. Bell Canada's weak, *post-facto* argument does not make the EULA ambiguous. *See Virtual Physical Center-Rockville*, 478 F. Supp. 2d at 850 (contract not ambiguous merely because parties disagree on its meaning).

Bell Canada's interpretation leads to an absurd result by improperly nullifying the forum-selection clause for software acquired in North America. *See Chicago Title*, 355 F.2d at 764; *Diamond Point*, 400 Md. at 521; *Ensor*, 243 Md. 492; *Heist*, 165 Md. App. at 151. Contrary to Bell Canada's argument, this Court should not disregard the EULA's clear meaning to seek out a phantom ambiguity. *See Mid Atlantic*, 294 F. Supp. 2d at 700. Nor should this Court, "as a matter of first resort," interpret the EULA "most strongly" against its drafter, Micro Focus. *See Clendenin*. 390 Md. at 459.

As the foregoing discussion shows, numerous principles of Maryland contract law firmly counsel this Court to enforce, not nullify, the EULA's logical meaning.

**B.     Bell Canada's Argument Is Inconsistent With Governing Authority On The Interpretation Forum-Selection Clauses**

In addition to being contrary to ordinary principles of Maryland contract law, Bell Canada's motion is inconsistent with governing decisions by this Court and other courts enforcing forum-selection clauses in a practical manner.[6]

---

[6]     It should be noted that Bell Canada's motion does not challenge the EULA's forum selection clause on any of the grounds set forth in *The Bremen* and *Gilman*. Thus, Bell Canada effectively concedes that: (1) the EULA's forum-selection clause was not induced by fraud or overreaching; (2) U.S. federal courts are not so unfair or inconvenient as to deny Bell Canada's day in court; and (3) enforcement of the EULA would not violate federal or state public policy. *See Gilman*, 345 Md. at 378. Rather than seeking dismissal on those relatively substantive issues, Bell Canada attacks the EULA's forum-selection clause on only one semantic ground.

Bell Canada's misinterpretation of the EULA is untethered to the commercial "realities" that the Supreme Court took pains to acknowledge both in *The Bremen*, 407 U.S. at 15, and in *Carnival*, 499 U.S. at 593. In this case, the EULA avoids significant risk and inconvenience for the licensor and all of its licensees by providing that disputes concerning software acquired in North America are to be governed by Maryland law and subject to the exclusive jurisdiction of the court of the United States, *i.e.*, to the federal courts. The commercial interests of Micro Focus and its customers are advanced by the EULA's broad division of the world into only five zones, with all litigation to occur in the relatively predictable courts of France, Germany, Japan, the United States, or England.

This Court has repeatedly rejected allegations of ambiguity and meaninglessness that are analogous to Bell Canada's allegation here. *See, e.g., Davis Media*, 302 F. Supp. 2d at 468; *Acciali*, 181 F. Supp. 2d at 464; *Koch*, 139 F. Supp.2d at 694; *Eisaman*, 87 F. Supp. 2d at 449-50. Those decisions establish that the mere fact that a forum-selection clause could arguably have been drafted more clearly does not automatically render the clause ambiguous or meaningless and therefore unenforceable. As Judge Blake found in *Koch*, even if one term "might be objectionable," such an objectionable term "should not, in isolation, determine the nature of the clause." *Accord Pacificcorp*, 2009 WL 3208008 at *6-*7 (clause assessed in view of ordinary contact principles rather than a clear and unequivocal standard); *A.O. Smith*, 2009 WL 3001503 at *3 (clause not ambiguous merely because it "*could have*" been drafted differently [emphasis in original]).

In summary, viewed in light of the decisions of the Supreme Court, this Court, and the great majority of other courts, the EULA's forum-selection clause is more than sufficiently clear to be enforced against Bell Canada.

## C.   Bell Canada's Motion Relies On Inapplicable Law And On Irrelevant And Inadmissible Evidence

### 1.   Inapplicable Law

Perhaps uncomfortable with governing law on forum-selection clauses, Bell Canada places heavy reliance on cases that rightfully have no bearing on resolution of Bell Canada's motion.

Bell Canada cites (at 16) two Second Circuit cases[7] and a Third Circuit case[8] for the proposition that "the existence of the clause must have been 'reasonably communicated' to the parties." As a matter of law, these cases are inapplicable, because none of the large number of governing decisions by the Supreme Court, the Fourth Circuit, this Court, or the Maryland appellate courts has engrafted this additional requirement onto the familiar test. *See Gilman*, 345 Md. at 378 (opponent of clause must show: fraud or overreaching; substantial unfairness and inconvenience to point of being deprived of a remedy or day in court; or contravention of a strong public policy of the forum in which action was filed). Moreover, the opponents of the clauses in those cases were consumers rather than large corporations involved in international commerce, and

---

[7]    *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.2d 95, 103 (2d Cir. 2006); *Spataro v. Kloster Cruise, Ltd.*, 894 F.2d 44, 45-46 (2d Cir. 1990).

[8]    *Hodes v. S.N.C. Achille Lauro Ed Altri-Gestione*, 858 F.2d 905, 908 (3d Cir. 1988)

Bell Canada's motion does not even attempt to argue that the forum-selection clause in the EULA was not "reasonably communicated" to Bell Canada.[9]

Equally inapplicable are the cases that Bell Canada cites on pages 17 and 18 of its memorandum. Although no governing authority has imposed a "clear and specific" requirement on forum-selection clauses, Bell Canada nevertheless claims (at 17 and 19) that this requirement is "well-settled" and even "universal," citing to *Western Refining Yorktown, Inc. v. BP Corp. N. Am., Inc.*, 618 F. Supp. 2d 513, 521-22 (E.D. Va. 2009) (citing *Whirlpool Corp. v. Certain Underwriters at Lloyd's London,* 662 N.E. 467, 471 (Ill. App. 1996)). Although the "clear and specific" requirement may be well-settled under Illinois law, which governed the contract in *Western Refining*, 618 F. Supp. 2d at 617-22, no such requirement has ever been recognized by the Maryland courts, the Fourth Circuit, this Court, or any other district court within the Fourth Circuit applying its own state's law. To the contrary, the many pertinent decisions by this Court applying Maryland law indicate that Maryland law does not disfavor forum-selection clauses and interprets them under "ordinary principles of contract interpretation" without adding any requirement of heightened clarity. *Cf. Pacificorp* , 2009 WL 3208008, *6-*7 (ordinary

---

[9]    So-called "clickwrap" and "shrinkwrap" agreements have long been customary and standard in the computer industry. A "clickwrap" agreement requires a user to agree to contractual provision by "clicking" on a dialogue box on a computer screen. A "shrinkwrap" agreement consists of written terms that appear when a user first opens packaged computer software or hardware. Such agreements are enforceable under the law of Maryland, which has adopted the Uniform Computer Transactions Act, Md. Com. Law Code Ann. § 22-1010 *et seq. See also Enforceability of "Clickwrap" or "Shrinkwrap" Agreements Common in Computer, Software, Hardware and Internet Transactions,* 106 A.L.R.5th 309 (2003).

principles of contract interpretation govern rather than a clear-and-unequivocal standard).[10]

Of the five non-binding decisions in Bell Canada's "see also" citation beginning on page 17, three involved clauses that were found to be ambiguous on the question of mandatory versus permissive jurisdiction.[11]  There is no such question in the instant case because the EULA's clause uses the word "exclusive."  The clause at issue in the first of the remaining two cases conferred exclusive jurisdiction on a non-existent court (the "High Court of New York"), and court in the second case declined to re-write the contract to include missing language in a clause that provided "[t]his Agreement . . . shall be decided by a court of competent jurisdiction" in a defined state.[12]

Likewise, Bell Canada's argument concerning the unreported Connecticut decision in *Evergreen Nat'l Indem. Co. v. Capstone Building Corp.*, 2008 WL 349457, *3 (D. Conn. Feb. 6, 2008), is misplaced because the clause at issue in that case was also

---

[10]   Moreover, *Western Roofing* is inapposite because a careful reading of the cases shows that standard forum-selection clauses which the Fourth Circuit and courts within it applying their own states' laws hold to be clear are regarded as ambiguous by courts applying Illinois law.  *Compare Ferri Contracting Co. v. Town of Masontown*, 2003 WL 22244905, *2 (4th Cir. Sept. 29, 2003) *and Nahigian v. Juno-Loudoun, LLC*, 2009 WL 310998, *4-*5 (E.D. Va. Sept. 28, 2009) *with Bodine Elec. Co. v. Viking Access Sys., LLC*, 2009 WL 3055362, *1-*2 (N.D. Ill. Sept. 22, 2009).

[11]   *See Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 77-78 (9th Cir. 1987); *Saxena v. Virtualabs, Inc.*, 2002 WL 992636, *2-*3 (N.D. Ill. May 15, 2002); *Eisenbud v. Omnitech*, 1996 WL 162245 (Del. Ch. March 21, 1996).

[12]   *See BP Marine Americas v. Geostar Shipping Co.*, 1995 WL 131056, *4 (E.D. La. March 25, 1995); *JHB Resource Mngmt, LLC v. Henkel Corp.*, 2006 WL 1681079, *1 (Conn. Super. May 31, 2006)

undisputedly missing language, and the court found that there were two "equally reasonable," opposing interpretations regarding what had been omitted. By way of contrast, no language is missing from the EULA, and Bell Canada fails to provide a reasonable explanation of why the EULA would have logically conferred exclusive jurisdiction for software acquired everywhere in the world *except* North America.

Thus, Bell Canada's reliance on inapplicable law only underscores that the frailty of Bell Canada's position.

## 2.   **Irrelevant And Inadmissible Evidence**

Unable to muster a persuasive argument based on the EULA's language or governing law, Bell Canada resorts (at 19) to extrinsic evidence. Under well-established principles of Maryland law, however, such extrinsic evidence is irrelevant to, and cannot alter, a contract's objective meaning. *See Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.*, 183 Md. App. 710, 723 (2009) (court may not resort to extrinsic evidence if it will alter contract's plain meaning). Moreover, the communications at issue are clearly inadmissible under Fed. R. Evid. 408(a)(2), because they were made "without prejudice" and for purposes of potential settlement only.[13]

---

[13]   Although Bell Canada makes various assertions about the April 14, 2009 letter from Micro Focus's Jane Smithard to Bell Canada's Michael Cole, Bell Canada fails to attach a copy of Smithard's letter to its motion. Smithard's letter, a redacted version of which is attached hereto as Ex. 3, bears the express heading "**Without Prejudice**." Likewise, Micro Focus provided the proposed "new EULA" to Bell Canada as an attachment to an e-mail with the express heading "Without Prejudice." *See* Ex. 4 hereto (Bray April 30, 2009 e-mail with attachment). Bell Canada attaches the "new EULA" as Ex. A to the Cole affidavit, and marks the top of that document "REDACTED." As the Court will note from the unredacted copy of the "new EULA," attached as part of Ex. 4 hereto, the language that Bell Canada redacted was:

## VI.    CONCLUSION

Consistent with Micro Focus' and its licensees' need to manage the risks and complexity of international commerce, the EULA divides the globe into five zones for purposes of both choice-of-law and "exclusive" forum selection. Because Bell Canada acquired Micro Focus' software in North America, Maryland law governs, and U.S. federal courts have exclusive jurisdiction. Bell Canada's contrary interpretation of the EULA is unreasonable and unpersuasive when viewed from the perspective of the contracting parties the at time Bell Canada acquired the software. Moreover, Bell Canada's interpretation is contrary to governing principles of general contract law, as well as to the  decisions of this Court and the great majority of other courts concerning forum-selection clauses more particularly. For all these reasons, Bell Canada's motion should be denied.

Respectfully submitted,

 /s/ Geoffrey H. Genth
Andrew Jay Graham, Bar No. 00080
Geoffrey H. Genth, Bar No. 08735
Ezra S. Gollogly, Bar No. 28088
KRAMON & GRAHAM, P.A.
One South Street, Suite 2600
Baltimore, Maryland  21202
(410) 752-6030 - Telephone
(410) 539-1269 - Facsimile

Attorneys for Plaintiffs

_____

EXHIBIT A
TO  SETTLEMENT AND RELEASE AGREEMENT.

Ex. 2, at 4 of 11. The effect of Bell Canada's questionable redaction is to make a presumptively-inadmissible document appear admissible to the Court.

## CERTIFICATE OF SERVICE

I hereby certify that, on this 3rd day of November, 2009, a copy of the foregoing

paper was served via the Court's ECF system on:

> William C. Sammons, Esquire
> John B. Isbister, Esquire
> Kristin P. Herber, Esquire
> Tydings & Rosenberg LLP
> 100 East Pratt Street
> 26th Floor
> Baltimore, Maryland 21202

> _/s/ Geoffrey H. Genth_____
> Geoffrey H. Genth, Bar No. 08735