IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICRO FOCUS (US), INC. <br> and MICROS FOCUS (IP), LTD <br><br>     **Plaintiffs** <br><br> v. <br><br> BELL CANADA <br><br>     **Defendant** | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * | <br><br><br> CIVIL No. 09-1085-RWT |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### REPLY MEMORANDUM IN SUPPORT OF BELL CANADA'S
### MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

In its Memorandum in Support of Motion to Dismiss for Lack of Personal Jurisdiction ("Support Memorandum"), defendant Bell Canada explained that it could not be subjected to the jurisdiction of this Court because it did not have the requisite minimum contacts with the State of Maryland, and because the purported forum selection language in the End User License Agreement ("EULA") on which the plaintiffs (together, "Micro Focus") were expected to rely, was so unclear that it could not constitute a knowing consent to jurisdiction, or an intentional waiver by Bell Canada of its right to contest jurisdiction.

Micro Focus has now filed its Memorandum in Opposition to Defendant's Motion to Dismiss for Lack of Personal Jurisdiction ("Opposition"). In it, Micro Focus concedes, *arguendo*, that Bell Canada does not have minimum contacts with Maryland, and argues only that the EULA creates jurisdiction, claiming that the EULA language has a "clear meaning" that subjects Bell Canada to jurisdiction not only in this district but in every federal district court in the United States. To make its point, Micro Focus rewrites the EULA language in an effort to create a clear meaning, argues that extrinsic evidence offered by Bell Canada is inadmissible

#1182403v.3

(citing an inapplicable rule), relies on inapposite cases, and fails to respond to Bell Canada's core "waiver" argument. These and other points will be addressed below, but it suffices here to say that Micro Focus's arguments present no legal or factual basis on which to deny Bell Canada's motion, and the motion should be granted.

I. **MICRO FOCUS'S ATTEMPT TO REWRITE THE EULA HIGHLIGHTS THE INFIRMITY OF THE ORIGINAL LANGUAGE.**

   A. <u>**Micro Focus's Linguistic Problem.**</u>

   The operative language in the EULA is found in two sentences of paragraph 17:

   > If Licensee acquires the Software in North America, the laws of the State of Maryland govern this License Agreement .... This License Agreement is subject to the exclusive jurisdiction of the courts of the country determining the applicable laws aforesaid.

EULA (Ex. 1 to Opp. at 3). Bell Canada identified the problem in this original EULA language in the support memorandum, where it noted that neither "Maryland" nor "North America" is a "country" and, therefore, the reference to "country" in the second sentence (the forum selection portion) created a meaningless *non sequitur*, leaving the EULA without a selected forum applicable to its North America sales. Supp. Mem. at 18-19. Apparently recognizing the disconnect between those two sentences, Micro Focus's opposition never quotes the original EULA language in full; rather Micro Focus opts to begin its opposition with what appears to be a quotation (it is indented, and single spaced), but what is really a self-serving paraphrase and rewriting of the EULA. According to Micro Focus, paragraph 17 of the EULA divides the world into "five zones," and jurisdiction is proper here because the software sales at issue put Bell Canada into the EULA language covering the "first" zone, which Micro Focus characterizes as follows:

> (1) If the software is acquired in North America, Maryland law applies, and exclusive jurisdiction is in the federal courts of the United States of America.

Opp. at 1.

Aside from the fact that Micro Focus's five-zone parsing of paragraph 17 is not immediately apparent from reading the original text, Micro Focus's rewrite of the first "zone" bears no resemblance to the operative EULA language: the original text has 38 words, the new one has 25; the original refers to a "Licensee" and a "License Agreement," the new one does not; the new one uses the words "federal" and "United States of America," words that appear nowhere in the original; the words "country" and "state" are in the original, but are missing from the new version. In short, Micro Focus has completely rewritten the EULA for the purpose of responding to Bell Canada's motion. While the new language may reflect what Micro Focus intended to say in the original EULA,[1] or what Micro Focus now wishes that it had said, Micro Focus's recast of the language is not what the original EULA *actually* says. Micro Focus refers to its now-characterization of the EULA as a "plain meaning interpretation," Opp. at 17, and reflective of its "clear meaning," *id.* at 19, and it accuses Bell Canada of positing a "phantom ambiguity." *Id.* But Bell Canada submits that the ambiguity in the original text is patent, and the only thing that is "phantom" in this discussion is the "country" whose courts were supposed to hear North American disputes under the original EULA language.

---

[1] Micro Focus's actual intent is obscure. As discussed below at pages 4-6, and in the support memorandum at page 19, Micro Focus sent Bell Canada a revised EULA, at or about the time this suit was filed, stating that disputes flowing from North American sales would be "subject to the exclusive jurisdiction of the courts of the State of Maryland." But that construct would have resulted in exclusive jurisdiction in a Maryland state court, not this federal court. *See Silo Point II LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807, 810-11 (D. Md. 2008) (use of word "of" is a limitation on sovereignty, not geography, and means the state's courts). Apparently realizing the problems with that language, it now proposes the "any federal court" rewrite.

Micro Focus attempts to explain its now-reading of the EULA, but the explanation simply compounds the confusion and highlights the ambiguity. The new reference to "United States of America," according to Micro Focus, flows from the fact that "Maryland" is a part of the United States and, therefore, the "country" referred to in the second sentence (of the original text) must refer to the "United States of America." Further, because the first sentence of the original referred to the laws "of" Maryland (and because "Maryland" has become a surrogate for the "United States of America"), the EULA *must* mean the courts "of the United States of America," that is, federal courts. *See* Opp. at 17. This attempted explanation is confusing and highly tenuous, and certainly does not support the notion that the meaning of the original text was "plain" or "clear." But, to the point here, the post-hoc explanation shows that the text must be significantly rewritten to come to Micro Focus's proffered construction. It is fundamental that this Court has no authority to rewrite the agreement, *see e.g., Compania De Astral, S.A. v. Boston Metals, Co.*, 205 Md. 237, 271 (1954) (the court may not, under the guise of construction, rewrite the contract made by the parties), and it should not do so here, particularly at the behest of the party who drafted it and created the problem in the first instance.[2]

**B.    Extrinsic Evidence.**

Although the ambiguity, and lack of clarity, in the original EULA should be apparent here, the Court also may consider extrinsic evidence to determine, in the first instance, whether there is an ambiguity. *See Admiral Builders Sav. & Loan Ass'n v. S. River Landing, Inc.*, 66 Md. App. 124, 129 (Md. App. 1986) (extrinsic evidence accepted "in the initial determination of

---

[2]    Micro Focus argues that the EULA language must be "interpreted from the lay perspective of the international parties" rather than the perspective of "U.S. citizens with extensive legal training and experience in the U.S. federal court system of government." Opp. at 18. It is hard to imagine that anyone *but* someone with extensive U.S. legal training could arrive at Micro Focus's now-reading of the EULA. Indeed, it is doubtful that an "international party" in, say, Mexico, would have *any* comprehension of the original EULA text, let alone the reading that Micro Focus now ascribes to it.

ambiguity, *vel non*"); *Vary v. Parkwood Homes, Inc.*, 199 Md. 411, 418 (1952). In its support memorandum, Bell Canada cited two documents to show that Micro Focus, itself, was confused by, or recognized the confusion in, paragraph 17 of the original EULA, thereby acknowledging that the original language was, at the least, ambiguous. The documents were the Smithard letter (threatening to sue in Canada or the U.K.) and the "new" EULA (revised to state clearly that jurisdiction would lie in "the courts of the State of Maryland"[3]). Supp. Mem. at 19. Micro Focus objects to Bell Canada's use of those documents, arguing that Bell Canada's proffer is inadmissible because (a) it offers "extrinsic evidence to alter a contract's 'objective meaning,'" and (b) the two referenced documents were sent to Bell Canada in connection with settlement discussions, rendering them inadmissible under Federal Rule of Evidence 408 (dealing with "offers to compromise"). Opp. at 24. Micro Focus is wrong on both counts.

First, the documents were offered by Bell Canada to show that the original EULA was, in fact, ambiguous--the Smithard letter demonstrated Micro Focus's confusion as to what forum (if any) had been selected, and the new EULA demonstrated that Micro Focus changed/clarified the forum selection language at or about the time of the filing of this suit. Supp. Mem. at 19. Thus the documents serve to demonstrate the initial ambiguity, and, therefore, are admissible under the cases cited above.

Second, Federal Rule of Evidence 408 has no application. By its terms, that Rule applies only to evidence that is offered to prove liability or damages.[4] *Coakley & Williams Constr., Inc. v. Structural Concrete Equip., Inc.*, 973 F.2d 349, 353 (4th Cir. 1992); *Constar Int'l, Inc. v. Ball*

---

[3] As explained in note 1, *supra*, the construct of that new EULA called for suits to be filed in Maryland state courts, not in this (or any) federal court.

[4] F.R.E. Rule 408(a) provides, in part:

> (a) Prohibited Uses. Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, . . . .

*Plastic Container Corp.*, 2006 WL 6021150, *1 (W.D. Wisc. Mar. 27, 2006) (citing the majority rule that "settlement offers are inadmissible only when offered to prove liability") (citations omitted). Bell Canada offered the two documents here on the issue of jurisdiction, not the validity or amount of Micro Focus's claim. The first document was cited because it threatened litigation in forums different from the 97 federal district courts Micro Focus now claims it could have selected, and the second (the new EULA) was a form document, created by Micro Focus that, by its terms, was not generated specifically for a Bell Canada transaction or any settlement. Neither relates to liability or damages, as anticipated by the Rule. Moreover, Rule 408 has no application to the facts that are otherwise discoverable. *See Kautsch v. Premier Commc'ns*, 2008 WL 539324 at *3 (W.D. Mo. Feb. 26, 2008) (holding that Rule 408 does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations); *see also* Fed. R. Evid. 408 advisory committee note (2006 amendment) (noting that prior language in the rule, expressly stating the "otherwise discoverable" exception, was stricken as "superfluous"). Obviously, the new EULA would be easily discoverable in this case, as would the Smithard letter. In short, this Court is free to consider Micro Focus's statements and actions offered by Bell Canada in the resolution of the pending motion.

### C. Rules of Construction.

While the Micro Focus rewriting of the EULA is inconsistent with both the original EULA language, and the modification that Micro Focus made to the EULA after this case was filed, the real point here is that its redrafting of the EULA in the opposition serves to highlight the fact that the original text was ambiguous, unclear, and essentially unintelligible. The existence of an ambiguity is for the Court to decide, *Nationwide Mut. Ins. Co. v. Regency*

*Furniture, Inc.*, 183 Md. App. 710, 723 (2009) (whether language is ambiguous is a question of law, for the court to decide), and Bell Canada asserts that such a determination is appropriate here.

Once the ambiguity is identified, the court may turn to rules of construction to assist in interpreting the original document. In that regard, Bell Canada cited numerous cases in its support memorandum for the proposition that forum selection clauses must be construed against the drafter. Supp. Mem. at 17-23. In response, Micro Focus acknowledges that Maryland construes documents against drafters, but argues that the rule is not one of "first resort,"[5] Opp. at 19, suggesting that Bell Canada has applied the rule in a vacuum. But Bell Canada did not invoke the rule as one of "first resort"; rather, it identified the ambiguity, demonstrated that there was no rational meaning that could be ascribed to it, and then argued that the words must be construed against the drafter--the sequence of events that Maryland law anticipates. *See Anderson Adventures, LLC v. Sam & Murphy, Inc.*, 176 Md. App. 164, 178-79 (2007).

Another rule of construction, pressed by Micro Focus, is that Maryland "disfavors contract interpretations that lead to absurd results." Opp. at 6. But the result that would pertain if the clause here is deemed to be unenforceable is not "absurd." While it is true that the result would be that this Court would not have personal jurisdiction over Bell Canada, that would simply mean that Micro Focus would be required to bring its action against Bell Canada in Canada. That result is hardly "absurd"; indeed, in the context of this case, it is a logical one. Suing its Canadian customer in Canada should hardly be an inconvenience for Micro Focus, a company that, according to the opposition, is "global" in its reach, with principal offices in four

---

[5] Micro Focus notes that Maryland does not apply the heightened "first resort" or "most strongly" scrutiny applied in some insurance cases. Opp. at 8. Bell Canada has not argued otherwise.

different countries, and other offices around the world *including in Canada.* Opp. at 4. Moreover, all activities pertinent to the Micro Focus claims occurred in Canada: as established in the unrefuted affidavits attached to the support memorandum, Bell Canada purchased the software in Canada, from a Canadian office of Amdocs (a reseller of Micro Focus software); all of the software is loaded on, and operated by, servers located in Canada; and the only contact between Bell Canada and Micro Focus was apparently with Micro Focus's Canadian affiliate. Supp. Mem. at 4-6. And the only federal claim in this case is suspect at best, *see* Supp. Mem. at notes 7 and 11, further eroding any rationale for pursuit of this claim in this court. There is every reason for this case to be in Canada and, notwithstanding the infirm EULA language, no reason for it to be here.[6] Thus, the grant of Bell Canada's motion does not mean that Micro Focus has no remedy, only that it must seek that remedy in a proper forum--a result that is not "absurd," and is perfectly consistent with (not in opposition to) "commercial reality." *Compare,* Opp. at 20 (claiming that Bell Canada is ignoring commercial reality).

Finally, Micro Focus argues that the grant of Bell Canada's motion would result in making the clause at issue "meaningless," and that such a result is contrary to another rule of construction applied by Maryland courts. Opp. at 15. While it is true that Bell Canada's point is that the clause is unenforceable, that result is consistent with the case law and does no violation to any rule of construction. Indeed, another consequence of ambiguous language is that, if the meaning is sufficiently obscure that the intention of the parties cannot be determined, then the agreement or provision is void. That is true generally with respect to agreements under

---

[6] Bell Canada recognizes that a *valid* forum selection clause moots a *forum nonconveniens* argument, so that the doctrine is not applicable here--if the motion is granted the case will be dismissed; if it is denied, the case will proceed here without regard to inconvenience. Nonetheless, if this case were analyzed under *forum nonconveniens* criteria, there would be little or no reason for this court to entertain jurisdiction. *See, e.g., Zinsler v. Marriott Corp.,* 605 F. Supp. 1499 (D. Md. 1985) (case involving an Austrian venture belonged in Austria, and was dismissed, even though the defendant was subject to personal jurisdiction in Maryland).


Maryland law, *see County Comm'rs v. Forty W. Builders, Inc.*, 178 Md. App. 328, 378 (2008), and, as discussed in the next portion of this reply, particularly true of forum selection clauses.

## II. NEITHER MICRO FOCUS'S CASES, NOR ITS ARGUMENT, ADDRESSES THE ISSUE HERE: WHETHER AN AMBIGUOUS FORUM SELECTION CLAUSE CAN OPERATE AS A WAIVER OF PERSONAL JURISDICTION.

### A. <u>Micro Focus's Cases</u>.

Micro Focus devotes much of its opposition to a discussion of cases that purportedly address Maryland and Federal law concerning forum-selection clauses. Opp. at 8-16. Bell Canada does not dispute the general propositions cited in those pages (i.e., a valid forum-selection clause may waive an objection to personal jurisdiction; forum-selection clauses are presumptively enforceable absent a "showing that enforcement would be unreasonable and unjust." Opp. p. 8); however, *none* of the cases cited by Micro Focus present a fact pattern remotely similar to the one facing this Court--where a defendant has been sued in a forum in which it does no business, and where jurisdiction rests *only* on an ambiguous forum selection clause. Indeed, only one case cited by the plaintiff even addresses the forum's jurisdiction, *vel non*, over the defendant.[7] Because none of the Micro Focus cases involves waiver (that is, where the defendant is sued in the "selected" forum and there is no other basis for jurisdiction in that forum) they do not assist this Court in deciding Bell Canada's motion.

The cases cited by Micro Focus on pages 8-16 of the opposition fall into two categories. In one group of cases, the defendant has moved to dismiss or transfer the case, not on the

---

[7] The only case cited by Micro Focus that discusses jurisdiction is *Costar Realty Information, Inc. v. Field,* 612 F. Supp. 2d 660 (D. Md. 2009). *See* Opp. at 8. In *Costar* the defendants filed a motion to dismiss for lack of personal jurisdiction, notwithstanding the existence of a forum selection clause that provided, in relevant part, "you irrevocably consent to the jurisdiction of the federal and state courts located in the State of Maryland." *Id.* There was no argument, or suggestion, that the claim was ambiguous. Finding that the forum selection clause was "mandatory and valid," and that Maryland's long-arm statute provided additional bases for asserting personal jurisdiction over the defendants, the court denied the motion. *Id.* at 670.

grounds that the court lacked jurisdiction over the defendant (the issue here), but on the grounds that the forum selection clause was mandatory and required that the plaintiff bring the suit in another forum. In other words, the suit was filed in a "nonselected" forum (but in which the defendant was subject to jurisdiction), and the defendant argues that the suit should have been brought in the "selected" forum. *See Sterling Forest Assocs., Ltd. v. Barnett-Range Corp.*, 840 F.2d 249 (4th Cir. 1988) (holding that trial court erred in denying motion to transfer case from the Eastern District of North Carolina to Eastern District of California, where forum selection clause in contract, providing that "venue shall be in California," was mandatory and not permissive); *Davis Media Group., Inc. v. Best Western Int'l, Inc.*, 302 F. Supp. 2d 464 (D. Md. 2004) (granting defendant's motion to dismiss/transfer on grounds that Arizona, not the District of Maryland, was proper forum, per mandatory forum section clause); *Acciai Speciali Terni USA, Inc. v. M/V Berane*, 181 F. Supp. 2d 458 (D. Md. 2002) (granting defendant's motion to dismiss based on mandatory forum selection clause); *Gita Sports Ltd. v. SG Sensortechnik Gmbh & Co.*, 560 F. Supp. 2d 432 (W.D.N.C. 2008) (granting motion to dismiss on grounds that valid, mandatory forum selection clause dictated that suit be brought in Germany); *Dan Dill, Inc. v. Ashley Furniture Indus., Inc.*, 2008 WL 3287255 (W.D.N.C. August 7, 2008) (granting motion to transfer from Western District of North Carolina based on mandatory forum selection clause); *P.M. Enters. v. Color Works, Inc.*, 946 F. Supp. 435 (S.D. W. Va. 1996) (granting defendant's motion to transfer venue, even though court had personal jurisdiction over defendant, where mandatory forum-selection clause contained in the parties' contract required litigation of dispute in Alabama); *A.O. Smith Corp. v. Transpac Container Sys. Ltd.*, 2009 WL 3001503 (C.D. Cal. May 8, 2009) (granting defendant's motion to transfer venue based on unambiguous and mandatory forum selection clause); *Secure Fin. Serv., Inc. v. Popular Leasing USA, Inc.*, 391

Md. 274 (2006) (suit filed in non-selected forum; remanded to trial to remedy procedural errors). *Koch v. America Online*, 139 F. Supp. 2d 690 (D. Md. 2000) (granting defendant's motion to dismiss when suit was filed in non-selected forum based on unambiguous, mandatory forum selection clause); *Eisaman v. Cinema Grill Sys., Inc.*, 87 F. Supp. 2d 446 (D. Md. 1999) (granting defendant's motion to dismiss when suit was filed in non-selected forum based on unambiguous, mandatory forum selection clause). In each of the cases in this first group, the decision ultimately came down to whether the clause at issue was mandatory or permissive, which, according to Micro Focus, makes them irrelevant here because there is "no such question in the instant case."[8] Opp. at 23.

In each of the cases in the second group, the defendant moved to dismiss or transfer the case on the grounds that the contract at issue contained a forum selection clause requiring that suit be brought in state, rather than federal, court. Thus, jurisdiction over the defendant was not an issue in those cases (the defendant in each case was subject to jurisdiction in the relevant state, and the only issue was in which court within the state the matter would be heard--state or federal). *See Silo Point II, LLC v. Suffolk Constr. Co.*, 578 F. Supp. 2d 807 (D. Md. 2008) (granting defendant's motion to dismiss for improper venue where appropriate forum was Maryland state court and not federal court per forum selection clause); *MTBR LLC v. D.R. Horton, Inc.*, 2008 WL 3906768 (D. Md. Aug. 22, 2008) (denying defendant's motion to dismiss

---

[8] Aside from the fact that Micro Focus distinguished away one-half of its own cases, some of the permissive/mandatory cases are in fact relevant, and they support Bell Canada's position that ambiguous forum selection clauses should not be enforced. In cases where the plaintiff sues in a nonselected forum, and successfully argues (over the objection of the defendant/drafter) that an ambiguous forum selection clause was permissive rather than mandatory, the result is that the forum selection clause is *not* enforced, at least as interpreted by the defendant/drafter. Cases cited in the support memorandum make the point. *See Brickwood Contractors, Inc. v. City of Durham*, 1997 U.S. Dist. LEXIS 6186 (M.D.N.C. Aug. 18, 1998); *JHB Resource Management, LLC v. Henkel Corp.*, 2006 WL 1681079 (Conn. Super. May 31, 2006); *Evergreen National Indemnity Co. v. Capstone Building Corp.*, 2008 U.S. Dist. LEXIS 8608 (D. Conn. Feb. 6, 2008). In each of those cases the court held that it would not enforce a forum selection clause that the defendant asserted was "mandatory," because of ambiguities in the language of the clause.

where forum selection clause did not "clearly and unambiguously" designate a state court over a federal court; federal jurisdiction was appropriate), *PacifiCorp v. SimplexGrinnell LP*, 2009 WL 3208008 (D. Or. Oct. 6, 2009) (mandatory forum selection clause that "clearly designate[d] a forum as the exclusive one" required that suit be remanded from federal court to state court); *Wausau Steel Corp. v. Roper Whitney of Rockford, Inc.*, 2009 WL 2197368 (W.D. Wis. July 23, 2009) (granting motion to remand where mandatory forum selection clause dictated suit must be filed in state court); *First Lowndes Bank v. KMC Group, LLC*, 2009 WL 174972 (M.D. Ala. Jan. 26, 2009) (granting motion to remand from federal to state court based on unambiguous and mandatory forum selection clause); *Ferri Contracting Co. v. Town of Masontown*, 2003 WL 22244905 (4th Cir. Sept. 29, 2003) (holding that forum selection clause dictating that disputes be resolved in a court "*within* the state" of West Virginia unambiguously meant state or federal court and, therefore, trial court erred in dismissing suit); *Nahigian v. Juno-Loudoun, LLC*, 2009 WL 310998 (E.D. Va. Sept. 28, 2009) (denying plaintiff's motion to remand on grounds that "[a] forum-selection clause that imposes a geographic restriction still permits litigation in the federal or state courts within that geographic area"); *Bodine Elec. Co. v. Viking Access Sys., LLC*, 2009 WL 3055362 (N.D. Ill. Sept. 22, 2009) (denying motion to remand based on unambiguous and geographically restrictive forum selection clause permitted litigation in federal court). Again, in each of these cases, personal jurisdiction over the defendant was not an issue.

While many (but not all) of Micro Focus's cases appear to involve language that one side or the other asserts is "ambiguous," none of them involves the type of perplexing disconnect found in the EULA language; rather they address terms that are either clear or nuanced so that, in most cases, the court is led to conclude that there is simply no ambiguity. *See, e.g., Silo Point* ("of" denotes sovereignty); *Davis* ("shall" mean excusive); *Koch* ("resides" means jurisdiction in

which court sits); *Eisaman* ("all litigation" is not ambiguous); *PM Enterprises* ("the proper venue" is unambiguously mandatory); *Dan Dill* ("state in which Licensed Business is located" is not ambiguous); *Bodine* ("courts located in Cook County" unambiguously refers to either state or federal courts located in Cook County); *Nahigian* ("shall be Loudon County" unambiguously implicates geography, not sovereignty). Micro Focus's cases are non-controversial and inapposite. Indeed, as set out below, the EULA language does not raise simply a question of interpretation of the meaning of a word or phrase. Rather, its ambiguity rises to the level of incoherence because the very meaning of that language depends on the presence of a geographical entity--a country--which is simply absent from the EULA language.

### B. Bell Canada's Cases.

In contrast to the cases cited by Micro Focus, those cited by Bell Canada are apposite and compel the conclusion that the forum selection clause contained in the EULA--in which the ambiguity flows from a *non sequitur* rather than a nuanced term--cannot be construed as a consent by Bell Canada to be haled into a foreign court and is, therefore, unenforceable. In making this point in its support memorandum, Bell Canada cited numerous cases for the proposition that "forum selection clauses should be clear and specific." Supp. Mem. at 17-18. While it is true, as Micro Focus asserts, that no Fourth Circuit or Maryland case has adopted that exact phraseology, Opp. at 22, this Court *has* held that a forum selection clause must "clearly and unambiguously" designate the forum, *MTBR LLC*, 2008 WL 3906768 at *6, a fine distinction at best. Moreover, as discussed in the preceding paragraph, none of the cases cited by Micro Focus have had to grapple with the type of drafting problems found in the EULA. In any event, Bell Canada cited cases from several other courts that make the point precisely, and illustrate the rationale that should be applied in evaluating the enforceability of the forum

selection clause at issue here. As evidenced by the cases cited at pages 17-18 in Bell Canada's support memorandum, the "clear and specific" standard is not a wild concept applied by a few rogue judges, but represents the widely-used criteria by which to evaluate ambiguous forum selection clauses. Even more importantly, in the cases cited on those pages in which language was found to be vague, the forum selection clause was deemed unenforceable--the remedy now sought here by Bell Canada. *See BP Marine Ams. v. Geostar Shipping Co., N.V.*, 1995 WL 131056 (E.D. La. Mar. 22, 1995) (concluding that "the forum selection clause is sufficiently vague to render it unenforceable"); *IFC Credit Corp. v. Warner Robbins Supply Co., Inc.*, 2005 U.S. Dist. LEXIS 26450 (N.D. Ill. Oct. 25, 2005) (holding that vague forum selection clause was unenforceable); *Powerdsine, Inc. v. Broadcom Corp.*, 2008 WL 268808 (E.D.N.Y. Jan. 29, 2008) (same).

Other cases agree. In *Kemper Mortgage, Inc. v. Russell*, 2006 WL 355613 (S.D. Ohio Feb. 16, 2006), for instance, the plaintiff argued that jurisdiction was proper over the defendant because of a choice of a forum selection clause and because the defendant had sufficient contacts with the forum. The forum selection clause stated that "any and all disputes shall be litigated in the Circuit Court of Montgomery County, Ohio," a court that did not exist. The court held that the clause was unenforceable, concluding that it was "not [just] ambiguous; it clearly demands an impossibility." *Id.* at *3. Although the Court went on to conclude that the defendant had contacts within the jurisdiction so the case could go forward, the clear holding with respect to the forum selection clause was that the infirm language could not impose jurisdiction on the defendant, and was unenforceable. Similarly, in *ORI, Inc. v. Lanewala*, 1999 WL 1423068 (D. Kan. Nov. 30, 1999), the forum selection clause at issue provided that "any court action commenced to enforce Paragraph 10 [covenants not to compete] of this Agreement shall have as

its exclusive venue the Overland Park, Kansas court house." Noting that the only court sitting in Overland Park, Kansas was the Overland Park, Kansas Municipal Court, a court without jurisdiction to hear the action, the court deemed the forum selection clause "too ambiguous" to enforce. *Id.* at *1. Pertinent here, the court based its decision, in part, on the well-settled principle that contracts are to be construed against their drafter. *Id.* at *2-3. *See also Polzin v. Appleway Equip. Leasing, Inc.*, 191 P.3d 476, 481 (Mont. 2008) ("A forum selection clause is 'unreasonable and unenforceable if the agreement is not 'deliberately and understandingly made,' and if the contractual language does not 'clearly, unequivocally and unambiguously express a waiver' of personal jurisdiction").

Under the heading of "Inapplicable Law," Micro Focus attempts to distinguish several of the cases cited by Bell Canada on the grounds that the forum selection clauses in those cases had "missing language" or the identification of "non-existent courts," presumably arguing that the EULA has neither. Opp. at 23. But those are precisely the types of flaws found in the original EULA, and which render the clause unenforceable. That the original EULA is missing language is evident from Micro Focus's attempt to clarify the clause by supplying such words as "United States of America" and "federal," which do not appear in the original (not to mention that the "clarification" deletes other words such as "country" and "state"). Opp. at 1. And, the fact that the original EULA called for resolution in courts of the "country" of "Maryland" and/or "North America" is the functional equivalent of identifying a non-existent court. Thus, cases cited by Bell Canada involving missing words are directly on point, as are the cases involving non-existent courts. *See also* Supp. Mem. at 20-22.

In each of the cases cited by Bell Canada, both here and in the support memorandum, in which the forum selection clause was deemed unenforceable due to linguistic infirmities, the

plaintiff could have (and may have) offered the court an explanation of what the infirm language could mean, or was intended to mean, just as Micro Focus does here. But in all of those cases the omissions or misstatements were deemed to be fatal deficiencies--there was no rewriting by the plaintiff or the court, and the forum selection clauses were held to be unenforceable.

The same result should apply to the original EULA.

### C. **Waiver.**

In its support memorandum, Bell Canada cited and discussed Maryland cases that require waivers of important rights to be made knowingly and intentionally, and explained that the confusing EULA language could not be construed to constitute a waiver under those standards. *See* Supp. Mem. at 22-23. Micro Focus does not address the waiver cases as such but argues, in a different context, that "ordinary principles of contract interpretation apply" without adding any requirement of heightened clarity, citing *PacifiCorp v. SimplexGrinnell LP*, 2009 WL 3208008 (D. Or. Oct. 6, 2009). *See* Opp. at 22. As discussed above, ordinary contract principles *do* require granting of the pending motion here, without any heightened standards. But, more to the point, the higher standard does, in fact, apply when, as here, the waiver is of a constitutionally granted or protected right.[9]

As Micro Focus concedes, Bell Canada maintains no contacts with Maryland sufficient to confer jurisdiction on this Court. Accordingly, Bell Canada has a constitutional due process right not to be subjected to this Court's jurisdiction, absent consent or a clear waiver. *See Int'l Shoe v. Washington*, 326 U.S. 310, 315 (1952) (stating that "in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he [must] have certain minimum contacts with it such that the maintenance of the suit does not offend

---

[9] *PacifiCorp*, a federal district case out of Oregon, involved the removal of a case from state to federal court, so the defendant was already subject to the jurisdiction of either court. Removal rights flow from statute, not the U.S. Constitution. *See* 28 U.S.C. § 1441.

'traditional notions of fair play and substantial justice.'").[10] The Supreme Court has held that a "waiver of constitutional rights in any context must, at the very *least*, be clear." *Fuentes v. Shevin*, 407 U.S. 67, 95 (1972) (emphasis in original). *See also Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393 (1937) (in the civil no less than the criminal area, "courts indulge every reasonable presumption against waiver").

Although Bell Canada has not found a Maryland case that addresses the waiver of the constitutional right to due process through a forum selection clause, other states have faced the issue. In *Telelphonic, Inc. v. Rosenblum*, 543 P.2d 825, 830 (N.M. 1975), for instance, the Supreme Court of New Mexico found that, where a defendant's only connection to a forum was an ambiguous forum selection clause, the case must be dismissed. The court reasoned, in dismissing the case, that an agreement to waive the constitutionally protected right not to appear in a foreign jurisdiction "must be deliberately and understandingly made, and language relied upon to constitute such a waiver must clearly, unequivocally and unambiguously express a waiver of this right." *Id. See May v. Figgins*, 607 P.2d 1132, 1138 (Mont. 1980) (holding that if a forum selection clause did not clearly specify which court was selected, then under the teaching of *Fuentes*, it failed to amount to a waiver of the defendant's "constitutional right to due process . . . [as] evaluated in that light and by the tests applicable to the waiver of constitutional rights"); *see also Am. Inst. of Mktg. Sys. v. Willard Realty Co., Inc.*, 173 S.E.2d 519 (N.C. App. 1970), *rev'd on other grounds*, 176 S.E.2d 775 (N.C. 1970) (holding a contractual forum selection provision to be a "sufficiently clear and definite waiver," as required by due process, and thus

---

[10] As a matter of law, alien corporations are protected by the due process clause of the Fourteenth Amendment. *See Afram Export Corp. v. Metallurgiki Halyps, S.A.*, 772 F.2d 1358, 1362 (7th Cir. 1985) (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984)).

enforceable); *Info. Leasing Corp. v. Jaskot*, 784 N.E.2d 1192, 1197 (Ohio App. 2003) (noting "due-process requirements" apply to waivers of personal jurisdiction).[11]

Bell Canada should not be deemed to have knowingly and intentionally waived a most important constitutional right by reason of contractual language that requires a complete rewriting to glean a meaning--at least the meaning that Micro Focus now ascribes to it.

## CONCLUSION

For the reasons here, and in the support memorandum, this Court has no jurisdiction over the person of Bell Canada, and the pending motion to dismiss the complaint should be granted.

/s/
William C. Sammons, Bar No. 02366
John B. Isbister, Bar No. 00639
Kristin P. Herber, Bar No. 27125
  Tydings & Rosenberg LLP
  100 East Pratt Street
  26th Floor
  Baltimore, Maryland 21202
  Phone: 410-752-9700
  Facsimile: 410-727-5460

Attorneys for Defendant
Bell Canada

---

[11] Also instructive on this point is *Powerdsine*, in which the plaintiff corporation sued former employees, including a Mr. Wang, for violating non-competition agreements. Plaintiff filed suit in New York, relying on a forum selection clause that, in the case of Wang's employment agreement, permitted suit to be filed in "any court . . . at the sole election of the company." *Id.* at *4. Wang apparently was not otherwise subject to the jurisdiction of the New York court. The court agreed with Wang's argument that the language was ambiguous and therefore could not be read as a consent to jurisdiction, at least not without "some language indicating an intention to be bound by the jurisdiction chosen by the plaintiff," such as a waiver of service of process. *Id.* Wang's motion to dismiss for lack of personal jurisdiction was granted.

#1182403v.3                                18